1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10

11   MARCEL MONJI,                          Case No. 1:19-cv-01526-JLT-CDB

12                    Plaintiff,            ORDER GRANTING DEFENDANTS' MOTIONS
                                            FOR SUMMARY JUDGMENT OR PARTIAL
13          v.                              SUMMARY JUDGMENT

14   COUNTY OF KERN, et al.,

15                    Defendants.

16

17          From August 21, 2018 to September 4, 2018, and again from October 20, 2018 to December

18   20, 2018, Plaintiff was incarcerated in Kern County jail facilities. He claims that during these periods

19   of confinement, he suffered violations of his Eighth and Fourteenth Amendment rights based upon the

20   jailers' classification, care and treatment of prisoners who, like him, have mental health needs and due

21   to the unsafe, unsanitary, and unhealthy conditions at the jail.[1]

22          Defendants now seek summary judgment or partial summary judgment of claims raised in

23   Plaintiff's Second Amended Complaint, filed by: (1) the County, KCSO, Behavioral Health,

24   _____

     [1] Plaintiff concedes the Eighth Amendment is inapplicable because he was not a convicted prisoner at times relevant.
25   (Doc. 75 at 9; Doc. 81 at 11.) Therefore, the Court will grant the County Defendants' request and dismiss the Second and
     Fourth causes of action pursuant to Rule 41. (Fed. R. Civ. P. 41(b); Doc. 59-12 at 15; *see also* Doc. 66-1 at 28-29.) These
26   Causes of Action also are subject to dismissal *sua sponte* by the Court for Plaintiff's failure to prosecute, upon the Court's
     consideration of the public interest in expeditious resolution and disposition on the merits; the need to manage its docket;
27   and the risk of prejudice to the Defendants. *See Ontiveros v. Warden FCC Lompoc*, 2024 WL 4843723, at *2 (C.D. Cal.
     Nov. 19, 2024) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 629–30 (1962)); *Dreith v. Nu Image, Inc.*, 648 F.3d 779,
28   788 (9th Cir. 2011) (the court has inherent power to dismiss cases *sua sponte* for lack of prosecution where the noted
     factors support dismissal).

                                                         1

1   Youngblood, Davis, and Walker (together the "County Defendants"), and (2) the Hospital Authority.

2   (Docs. 59, 66.) Having reviewed the parties' pleadings in light of controlling legal authority, the

3   record, and pursuant to case management and standing orders and Local Rule, the Court finds the

4   matter suitable for decision without oral argument.  (Docs. 65, 72; *see also* E.D. Cal. Local Rules 230,

5   260.)  The Court's ruling is discussed below.

6                                    **I. BACKGROUND**

7   **A.    Factual Background[2]**

8       **1.    Preliminary Facts**

9       Before his arrests in 21018, Plaintiff had a history of drug and alcohol abuse, spinal fractures,

10  and psychiatric conditions, and had been on disability for approximately 20 years.  Plaintiff was held

11  in the custody of the KCSO and was a pre-trial detainee during both periods of incarceration.

12      **2.    Facts Relating to the first incarceration**

13      On August 21, 2018, Plaintiff was arrested and booked at the County's Central Receiving

14  Facility.  The Hospital Authority's intake nurse conducted a reception health screening.  During the

15  screening, Plaintiff disclosed a history of bipolar disorder and that he was using psychiatric

16  medication.  The intake nurse issued a referral to Behavioral Health for a mental health screening, and

17  requested Plaintiff's prescription and medication information from his pharmacy.  Plaintiff was

18  classified to be housed in general population.

19      In the days following, Plaintiff used the sick-call process to request his prescribed mental

20  health medication, particularly Klonopin. Plaintiff was advised that the prescription and medication

21  information received from his pharmacy needed to be reviewed by a doctor before medication could

22  be dispensed.  Behavioral Health staff triaged the mental health referral and determined that Plaintiff

23  should be seen for a mental health screening within five days, i.e., by August 26, 2018.

24      On August 26, 2018, Plaintiff was reclassified to administrative segregation following an

25  incident at his cell early that morning.  Later that same day, he was screened for mental health in

26  administrative segregation by a Behavioral Health staff member, who determined that he should be

27  seen "STAT" by a Behavioral Health psychiatrist for assessment of medication support.

28  _____
[2] The Court finds the facts recounted in this section to be undisputed.

On August 31, 2018, a Behavioral Health psychiatrist reviewed the prescription and medication information received from Plaintiff's pharmacy and issued a telephonic order declining administration of medication until Plaintiff could be seen in person by a psychiatrist. That same day, Plaintiff was reclassified to general population and transferred to the Lerdo Jail Facility to facilitate the September 5, 2018 appointment with a Behavioral Health psychiatrist for medication support. Plaintiff was released from custody on September 4, 2018, without being seen by a psychiatrist or receiving prescription medication.

### 3.    Facts Relating to the Second Incarceration

On October 20, 2018, Plaintiff was again arrested and booked into County's CRF. The Hospital Authority's intake nurse conducted a reception health screening. During the screening, Plaintiff disclosed a history of depression that was treated with medication. The intake nurse issued a referral to Behavioral Health for a mental health screening. Two days later, Plaintiff was transferred to a general population cell at Lerdo. In the weeks that followed, Plaintiff submitted multiple sick-call slips including for mental health medication. During a November 15, 2018 visit from a Hospital Authority nurse, Plaintiff indicated that he had been on bipolar medication. The nurse initiated verification of prescription and medication information from Plaintiff's pharmacy. The next day, a Behavioral Health staff member conducted a mental health screening and determined that Plaintiff should be seen "STAT" by a Behavioral Health psychiatrist for assessment of medication support.

On November 18, 2018, Plaintiff informed jail deputies that other inmates in his pod were threatening him, and he requested a housing change. The jail classification department interviewed Plaintiff and reclassified him to administrative segregation twenty minutes later. Three days later, Hospital Authority staff provided Behavioral Health with Plaintiff's prescription and medication information received from his pharmacy. On November 26, 2018, Plaintiff was seen by Hospital Authority staff related to medical complaints and complaints about not having bipolar medication for 37 days. The next day Hospital Authority staff issued a secondary mental health referral to Behavioral Health.

On December 6, 2018, Plaintiff was seen by Behavioral Health psychiatrist William Worral. Dr. Worral noted Plaintiff's history of anxiety, depression, panic attacks, insomnia, and episodes of

crying, and his history of psychiatric medications.  Dr. Worral diagnosed Bipolar II disorder, Cannabis Use Disorder, Alcohol Use Disorder and Unspecified anxiety disorder.  Dr. Worral prescribed multiple mental health medications, which Hospital Authority staff administered.  On December 19, 2018, Plaintiff's criminal case was resolved with the court issuing a restraining order and giving him 62 days credit for time served.  The next day, Plaintiff was released from custody.

**B.    Procedural Background**

Plaintiff alleges that during his two periods of incarceration, the Defendants placed him in administrative segregation solely because of his mental health history and needs, subjected him to unsanitary and unhealthy conditions and failed to protect him from other inmates, and were deliberately indifferent to his serious mental health needs. He bases his claims on the Fourth, Eighth, Fourteenth Amendment and subjected him to cruel and unusual punishment under the Eighth Amendment. He seeks legal and exemplary damages and injunctive relief.

## II. STANDARD OF DECISION

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Wash. Mut. Inc. v. United States*, 636 F.3d 1207, 1216 (9th Cir. 2011).  Material facts are those that may affect the outcome of the case. *Nat'l Ass'n of Optometrists & Opticians v. Harris*, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Liberty Lobby*, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine dispute of material fact.  *Celotex Corp.*, 477 U.S. at 323.  Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' "  *Id.* at 324 (quoting Fed. R. Civ. P. 56(c), (e)); *see also Norse v. City of Santa Cruz*, 629 F.3d 966, 973 (9th Cir. 2010) (*en banc*) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."), *cert. denied City of Santa Cruz, Cal. v.*

1  *Norse*, 565 U.S. 823 (2011). "In judging evidence at the summary judgment stage, the court does not

2  make credibility determinations or weigh conflicting evidence." *Soremekun v. Thrifty Payless, Inc.*,

3  509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the

4  nonmoving party." *Id.* "Disputes over irrelevant or unnecessary facts will not preclude a grant of

5  summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th

6  Cir. 1987); *In re Oracle Corp. Sec. Litig.,* 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477

7  U.S. at 325) (when the non-moving party bears the burden of proof at trial, the moving party need

8  only point out to the district court "[t]hat there is an absence of evidence to support the nonmoving

9  party's case."). If the moving party meets this initial burden, however, the nonmoving party cannot

10  defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the

11  material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 586 (1986).

12  ### III. DISCUSSION[3]

13  **A.  Judicial Notice**

14      The County Defendants request judicial notice of:

15  > A true and correct copy of Kern County Sheriff's Office Detentions Bureau Policies K-100, K-400, D-100, D-220, D-600. H-400, H-800 (Doc. 59-9 at 39-58); and

16

17  > A true and correct copy of Behavioral Health Policies 201.10, 202.10, and 204.10 (Doc. 59-9 at 97-109).

18  (Doc. 59-14 at 2.) Plaintiff does not oppose the request or challenge the accuracy and authenticity of

19  the identified documents. (*See* Docs. 75, 81.)

20      A court may to take judicial notice of any facts: (1) "generally known within the trial court's

21  territorial jurisdiction" or (2) that "can be accurately and readily determined from sources whose

22  accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); *see also United States v. Bernal-*

23  *Obeso*, 989 F.2d 331, 333 (9th Cir. 1993). The Court "must take judicial notice if a party requests it

24  and the court is supplied with the necessary information." Fed. R. Evid. 201(c)(2).

25      The County Defendants represent that the policies in question are in the public record and

26  available online. (*See* Doc. 59-6 at 2; Doc. 59-7 at 4.) Matters of public record are common subjects

---

27  [3] The Court finds the facts recounted including those purportedly disputed by Plaintiff, to be undisputed unless stated
28  otherwise.

of judicial notice.  *See, e.g.*, *McVey v. McVey*, 26 F. Supp. 3d 980, 985 (C.D. Cal. 2014); *O'Toole v. Northrop Grumman Corp*., 499 F.3d 1218, 1225 (10th Cir. 2007) ("It is not uncommon for courts to take judicial notice of factual information found on the world wide web"); *Denius v. Dunlap*, 330 F.3d 919, 926-27 (7th Cir.  2003) (taking judicial notice of information on the website of a government agency); *United States ex rel. Dingle v. BioPort Corp*., 270 F.Supp.2d 968, 972 (W.D. Mis. 2003) ("[G]overnment documents are generally considered not to be subject to reasonable dispute . . . This includes public records and government documents available from reliable sources on the Internet"); *Quiroga v. Graves*, 2019 WL 3936132, at *4 (E.D. Cal. Aug. 20, 2019), *report and recommendation adopted,* 2019 WL 6170593 (E.D. Cal. Nov. 20, 2019) (taking judicial notice of KCSO Detentions Bureau Policies and Procedures for Inmate Grievances); *see also Sisneroz v. Whitman*, 2006 WL 2583000, at *4 n.1 (E.D. Cal. Sept. 6, 2006) (judicial notice taken of County's policy regarding treatment of civil detainees under the Sexually Violent Predator Act).

The Court will take judicial notice of the proffered County policies.  Plaintiff has not raised any authentication issues.  Furthermore, the Court finds the proffered policies could be admissible at trial upon the direct testimony of a competent witness with personal knowledge.  *See* Fed. R. Civ. P. 56(c)(4), (e); *Burch v. Regents of Univ. of California*, 433 F. Supp. 2d 1110, 1119-20 (E.D. Cal. 2006) (citing *Celotex Corp.,* 477 U.S. at 324) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").

## B.    Evidentiary Objections

In moving for or opposing summary judgment, "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence."  Fed. R. Civ. P. 56(c)(2); *see also Block v. City of Los Angeles*, 253 F.3d 410, 418-19 (9th Cir. 2001) ("To survive summary judgment, a party does not necessarily have to produce evidence in a form that would be admissible at trial, as long as the party satisfies the requirements of [Federal Rules of Civil Procedure 56].");  *Fraser v. Goodale*, 342 F.3d 1032, 1036-37 (9th Cir. 2003) (quoting *Block*, 253 F.3d at 418–19); *Burch*, 433 F. Supp. 2d at 1119-20 (even if the non-moving party's evidence is presented in a form that is currently inadmissible, such evidence may be evaluated on a motion for summary judgment so long as the moving party's objections could be cured at trial); *Starr Indemnity & Liability*

1    *Company v. Jt2, Inc.*, 2023 WL 7167753, at *2 (E.D. Cal. October 31, 2023) (same).

2        The Court overrules the objections by both parties, as discussed below.  To the extent the items

3    of evidence are not relied upon by the Court herein, any objections thereto also are overruled as moot.

4    *See Am. Guard Servs., Inc. v. First Mercury Ins. Co.,* 2017 WL 6039975, at n.5 (C.D. Cal. Apr. 14,

5    2017), *aff'd,* 741 F. App'x 407 (9th Cir. 2018).

6        **1.        County Defendants' Objection**

7        The County Defendants' object to Plaintiff's Exhibit 4, which is his purported jailhouse

8    journal, as hearsay outside of any exception or exclusion.  (Doc. 79-1 at 2; Doc. 79-2 at 47-55.)

9    These Defendants argue the journal is unreliable; not on a matter Plaintiff once knew about but cannot

10   recall well enough to testify fully and accurately; not made or adopted when the matter was fresh in

11   Plaintiff's memory; and not an accurate reflection of Plaintiff's knowledge.  (*Id.* citing Fed. R. Evid.

12   801(c), 802.)  The Court observes that Plaintiff, in the Exhibit, appears to have recorded his thoughts

13   during his Second Incarceration.  (Doc. 75-7 at 6-7, 10-11.)

14       Hearsay evidence is generally inadmissible unless a federal statute or rule provides otherwise.

15   (Fed. R. Evid. 802; *see also* Fed. R. Evid. 801(c) (defining "hearsay" as a statement that a declarant

16   does not make while testifying in court and offers into evidence to prove the truth of the matter

17   asserted).)  A summary judgment motion may not be supported or opposed by hearsay (absent

18   exception or exclusion).  Fed. R. Evid. 801-802; *Bernstein v. Kemper Indep. Ins. Co*., 670 F. Supp. 3d

19   1018, 1030 (E.D. Cal. 2023) (citing *Cherewick v. State Farm Fire & Cas*., 578 F. Supp. 3d 1136, 1157

20   (S.D. Cal. 2022)).  "[H]earsay evidence in [Rule 56] affidavits is entitled to no weight."  *Scosche*

21   *Indus., Inc. v. Visor Gear Inc.*, 121 F.3d 675, 681 (Fed. Cir. 1997).

22       The Court finds the hearsay objection is redundant of the Rule 56 standard and overrules it.

23   *See Hunt v. City of Los Angeles*, 2021 WL 768248, at *11 (C.D. Cal. Jan. 26, 2021), *report and*

24   *recommendation adopted*, 2021 WL 765418 (C.D. Cal. Feb. 26, 2021), *aff'd,* 2022 WL 3714490 (9th

25   Cir. Aug. 29, 2022) (citing *Comite de Jornaleros de Redondo Beach v. City of Redondo Beach*, 657

26   F.3d 936, 964 n.7 (9th Cir. 2011)) ("Rule 56 is precisely worded to exclude evidence only if it's clear

27   that it cannot be presented in an admissible form at trial."); *see also JL Beverage Co., LLC v. Jim*

28   *Beam Brands Co.*, 828 F.3d 1098, 1110 (9th Cir. 2016) (noting that "at summary judgment a district

court may consider hearsay evidence submitted in an inadmissible form, so long as the underlying evidence could be provided in an admissible form at trial, such as by live testimony").

Plaintiff could cure the hearsay objection by providing testimony or affidavit bringing the journal within a hearsay exception, for example the hearsay exception for recorded recollection. *See* Fed. R. Evid. 803(5); *see also Cheeks v. Gen. Dynamics,* 22 F. Supp. 3d 1015, 1027 (D. Ariz. 2014), *order clarified*, 2014 WL 11514328 (D. Ariz. Nov. 18, 2014), *and aff'd in part sub nom. Cheeks v. Gen. Dynamics C4 Sys. Inc.,* 684 F. App'x 658 (9th Cir. 2017) ("Although Plaintiff's hearsay objection is likely to be well taken, because the evidence could conceivably be converted into an admissible form for trial, the Court will consider the evidence for the purposes of summary judgment.").Also, courts have found hearsay objections merely duplicative of the Rule 56 standards to the extent the objection is directed only the form of evidence and not to admissibility of content at trial. *See Gatison v. Cnty. of Riverside Sheriff Dep't,* 2023 WL 9101047, at *5 (C.D. Cal. Nov. 28, 2023), *report and recommendation adopted*, 2024 WL 54596 (C.D. Cal. Jan. 4, 2024) (evidentiary objections to a motion for summary judgment such as lack of foundation, speculation, hearsay and relevance are duplicative of the summary judgment standard itself); *Garlick v. Cnty. of Kern*, 167 F. Supp. 3d 1117, 1125 (E.D. Cal. 2016) (summarily dismissing as improper on summary judgment "[N]early blanket objections to the proffered evidence . . . on the basis of relevance, hearsay, lack of foundation, lack of personal knowledge, prejudice, improper character evidence, and assuming facts not in evidence[,]" and noting that the parties "[M]ay address evidentiary issues in pre-trial motions[.]").  Notably, Defendants do not address whether the objected to evidence could be submitted in an admissible form at trial.  *See Cheeks*, 22 F. Supp. 3d at 1027.

Additionally, the Court is to evaluate the non-moving party's evidence more leniently on summary judgment.  *See Burch,* 433 F. Supp. 2d at 1121.  In this regard as well, the non-moving party's evidence need not be in a form that is admissible at trial.  *See Thomas v. Swarthout,* 2016 WL 1359934, at *4 (E.D. Cal. Apr. 5, 2016), *report and recommendation adopted,* 2016 WL 3753343 (E.D. Cal. July 13, 2016) (citing *Burch,* 433 F. Supp. 2d at 1122); *see also Talavera v. Glob. Payments, Inc.,* 670 F. Supp. 3d 1074, 1088 (S.D. Cal. 2023) ("While the facts underlying the affidavit must be of a type that would be admissible as evidence, the affidavit itself does not have to be in a

1  form that would be admissible at trial.").

2  **2.  Plaintiff's Objections**

3  Plaintiff objects to County Defendants' Undisputed Material Fact (hereinafter "CUMF") 79

4  and 81 as irrelevant.  (Doc. 75-1 at 47-48.)   Therein, the County Defendants state that:

5  79. It is well known among benzodiazepine abusers that unethical or overprescribing
6  physicians will supply abusers with benzodiazepine drugs it [sic] the abuser reports they
   have a panic disorder. Evidence: Declaration of Alan Abrams M.D. Paragraph 15

7  81. Klonopin carisopodol and hydrocodone are controlled and highly abusable
8  medications. These three medications are particularly popular and highly dangerous, and
   have been given the name "The Holy Trinity" by drug abusers because of the rapid
9  euphoric effects. Evidence: Declaration of Alan Abrams M.D. Paragraph 16.

10  Relevant evidence is admissible unless a federal statute, the Federal Rules of Evidence, or

11  rules prescribed by the Supreme Court provide otherwise.  Fed. R. Evid. 402.  Irrelevant evidence is

12  not admissible.  *Id.*  When evaluating a motion for summary judgment, the court "cannot rely on

13  irrelevant facts, and thus relevance objections are redundant."  *Burch,* 433 F. Supp. 2d at 1119; *see*

14  *also Weatherby Locums Inc., v. Kern County Hospital Authority*, 2024 WL 4729057, at *4 (E.D. Cal.

15  November 8, 2024) (same).

16  Plaintiff's relevance objection to CUMF's 79 and 81, construed as objection to the evidence

17  cited therein, is overruled.  An objection to evidence on the grounds that it is immaterial or irrelevant

18  "[is] duplicative of the summary judgment standard itself[,]" and  unnecessary in summary judgment

19  proceedings, and the Court will not consider the objection.  *See Burch,* 433 F.Supp.2d at 1119; *see*

20  *also US E.E.O.C. v. Placer ARC*, 114 F. Supp. 3d 1048, 1052 (E.D. Cal. 2015) ("Because the court

21  does not rely on irrelevant evidence when considering motions for summary judgment, such

22  objections are redundant to the practice of summary judgment itself.").

23  Though the Court may exclude relevant evidence if its probative value is substantially

24  outweighed by a danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay,

25  wasting time, or needlessly presenting cumulative evidence[,]"  Fed. R. Evid. 403, Plaintiff makes no

26  such argument or showing.  In any event, an objection on grounds evidence is prejudicial, is not

27  necessary on summary judgment and the Court would not consider it.  "Federal Rule of Evidence 403

28  objections are unnecessary at the summary judgment stage because there is no jury that can be misled

1  and no danger of confusing the issues." *Ward v. Crow Vote LLC*, 634 F. Supp. 3d 800, 808 (C.D. Cal.

2  2022) (citing *Holt v. Noble House Hotels & Resort, Ltd.*, 370 F. Supp. 3d 1158, 1164 (S.D. Cal.

3  2019)) (citing *Montoya v. Orange Cnty. Sheriff's Dep't*, 987 F. Supp. 2d 981, 994 (C.D. Cal. 2013)).

4  **C.    First Cause of Action**

5        Plaintiff alleges that Defendants denied due process under the Fourteenth Amendment through

6  deliberate indifference to the serious medical and mental health needs of jail detainees.[4] [5]

7        **1.    Legal Standards**

8              **a.    Civil Rights Act**

9        The Civil Rights Act, codified at 42 U.S.C. § 1983, provides in relevant part:

10            Every person who, under color of [state law] . . .  subjects, or causes to be subjected, any
              citizen of the United States . . . to the deprivation of any rights, privileges, or immunities
11            secured by the Constitution . . . shall be liable to the party injured in an action at law, suit
              in equity, or other proper proceeding for redress.
12

13  42 U.S.C. § 1983.  "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a

14  method for vindicating federal rights elsewhere conferred.' " *Graham v. Connor*, 490 U.S. 386, 393-

15  94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)).

16        A § 1983 action premised on violation of the Fourteenth Amendment for inadequate medical

17  (including mental health) care requires allegations that each defendant acted with deliberate

18  indifference to the plaintiff's serious medical needs.  *Castro v. County of Los Angeles*, 833 F.3d 1060,

19  1067-68 (9th Cir. 2016) (en banc); *Wright v. Dunne*, 2020 WL 977963, at *8 (E.D. Cal. Feb. 28, 2020)

20  (citing *Van Orden v. Downs*, 609 F. App'x 474, 475 (9th Cir. 2015)) (there exists a clearly established

21  right to be free from deliberate indifference to serious mental health needs).

22        Inmates not yet convicted may bring deliberate indifference claims against prison officials

23

24  [4] The Court does not reach, as moot, Plaintiff's alleged third party standing.  Plaintiff has not proffered facts of entitlement to assert the rights of others who cannot protect their own interests.  *See Pioneers Mem'l Healthcare Dist. v. Imperial Valley Healthcare Dist.*, 2024 WL 3858135, at *5 (S.D. Cal. Aug. 19, 2024) (citing *E. Bay Sanctuary Covenant v. Trump*,

25  932 F.3d 742, 764 (9th Cir. 2018)) (quoting *Sessions v. Morales-Santana*, 582 U.S. 47, 57, 137 S.Ct. 1678, 198 L.Ed.2d 150 (2017)).  Nor has Plaintiff suffered any constitutional injury for which § 1983 relief can be granted, as discussed

26  herein.  *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 393 n.5 (2024) (quoting *Hollingsworth v. Perry*, 570 U.S. 693, 708, 133 S. Ct. 2652 (2013)).

27

28  [5] Plaintiff does not allege or proffer facts that Defendants were deliberately indifferent to serious medical needs apart from the mental health needs discussed herein.

10

1    "under the Fourteenth Amendment's Due Process Clause." *Id.* at 1067–68; *see also Mendiola–*

2    *Martinez v. Arpaio*, 836 F.3d 1239, 1246 n.5 (9th Cir. 2016) ("[P]retrial detainees are entitled to the

3    potentially more expansive protections of the Due Process Clause of the Fourteenth Amendment.").

4    Such a plaintiff must show that the prison officials acted with "deliberate indifference." *Id.* at 1068.

5    The test for demonstrating deliberate indifference is in two parts. First, a plaintiff "must show a

6    serious medical need by demonstrating that failure to treat a prisoner's condition could result in further

7    significant injury or the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091,

8    1096 (9th Cir. 2006). Important factors include "[t]he existence of an injury that a reasonable doctor

9    or patient would find important and worthy of comment or treatment; the presence of a medical

10   condition that significantly affects an individual's daily activities; or the existence of chronic and

11   substantial pain. . . ." *McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992), *overruled on other*

12   *grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997).

13        Second, a plaintiff must show that "the defendant's response to the need was deliberately

14   indifferent." *Jett*, 439 F.3d 1096. A showing of deliberate indifference requires demonstrating "(a) a

15   purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused

16   by the indifference." *Id.* Indifference "may appear when prison officials deny, delay or intentionally

17   interfere with medical treatment, or it may be shown by the way in which prison physicians provide

18   medical care." *Id.*

19        **b.    *Monell* Liability**

20        Plaintiff brings claims against the County and the Hospital Authority and their employees

21   acting under color of law pursuant to *Monell v. Department of Social Services of the City of New York*,

22   436 U.S. 658 (1978), which provides that municipalities including local governmental entities may be

23   liable for unconstitutional acts under § 1983. *Monell* is clear, however, that "a municipality cannot be

24   held liable under § 1983 solely because it employs a tortfeasor - or, in other words, a municipality

25   cannot be held liable under § 1983 on a *respondeat superior* theory." 436 U.S. at 691. Instead, a

26   municipality can only be held liable for injuries caused by the execution of its policy or custom or by

27   those whose edicts or acts may fairly be said to represent official policy. *Id.* at 694. More generally, a

28   plaintiff must show the following: (1) the plaintiff was deprived of a constitutional right, (2) the

11

defendant had a policy or custom, (3) the policy or custom amounted to deliberate indifference to the plaintiff's constitutional right, and (4) the policy or custom was the moving force behind the constitutional violation. *Mabe v. San Bernardino Cnty.*, 237 F.3d 1101, 1110-11 (9th Cir. 2001); *see also Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) ("Normally, the question of whether a policy or custom exists would be a jury question. However, when there are no genuine issues of material fact and the plaintiff has failed to establish a prima facie case, disposition by summary judgment is appropriate.").

Therefore, municipalities are subject to damages under 42 U.S.C. § 1983 if the plaintiff proves: (1) a municipal employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom, (2) the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy, or (3) an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989) (citing *Monell*, 436 U.S. at 694)); *see also Brown v. Cnty. of San Bernardino*, 2021 WL 99722, at *4 (C.D. Cal. Jan. 8, 2021) (citing *Trevino*, 99 F.3d at 918) (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346-47 (9th Cir. 1992)) (same); *Thomas v. Cty. of Riverside*, 763 F.3d 1167, 1170 (9th Cir. 2014) (same). Official policy "includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011); *see also Monell*, 436 U.S. at 690-91, 694.

Under *Monell*, a plaintiff "must show a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Bell v. Williams*, 108 F.4th 809, 824 (9th Cir. 2024); *see also Villegas v. Gilroy Garlic Festival Ass'n*, 541 F.3d 950, 957 (9th Cir. 2008) (quoting *City of Canton v. Harris*, 489 U.S. 378, 385 (1989)). Liability for improper custom or practice "may not be predicated on isolated or sporadic incidents," but must be "founded upon practices of sufficient duration, frequency and consistency that the conduct has become a traditional method of carrying out policy." *Trevino*, 99 F.3d at 918.

Where the alleged policy or practice is a failure to act to preserve constitutional rights, the

12

plaintiff must also establish the failure "amounts to deliberate indifference."  *City of Canton*, 489 U.S. at 389-91; *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (quoting *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992)) ("In addition, a local governmental entity may be liable if it has a 'policy of inaction and such inaction amounts to a failure to protect constitutional rights.' ").  The standard for deliberate indifference for a governmental entity is an objective one.  *See Scalia v. Cnty. of Kern*, 493 F. Supp. 3d 890, 902 (E.D. Cal. 2019) (citing *Castro*, 833 F.3d at 1076.)

"One way of showing a direct causal link between a municipal policy or custom and the alleged constitutional deprivation is by showing that the municipality demonstrated deliberate indifference to constitutional rights when it trained its employees.  This requires proof that a municipal actor disregarded a known or obvious consequence of his action." *Bell*, 108 F.4th at 824.

While inadequacy of training may constitute a "policy" giving rise to *Monell* liability, "adequately trained [employees] occasionally make mistakes; the fact that they do says little about the training program or the legal basis for holding the [municipality] liable."  *Harris*, 489 U.S. at 379.  Therefore, a claim of inadequate training is only cognizable under § 1983 "where [the] failure to train reflects deliberate indifference to the constitutional rights of its inhabitants." *Id.* at 392.  In order to show that a failure to train amounts to deliberate indifference, it is "ordinarily necessary" to demonstrate "a pattern of similar constitutional violations by untrained employees." *Thompson*, 563 U.S. at 62; *see also Morris v. City of Los Angeles*, 2024 WL 1256276, at *3 (C.D. Cal. Mar. 25, 2024) (citing *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 407-08 (1997)) (when premising *Monell* liability on a failure to train, a plaintiff must allege more than a one-time incident; his allegations must establish that "the existence of a pattern of tortious conduct by inadequately trained employees . . . [wa]s the 'moving force' behind the plaintiff's injury.")  In certain cases, however, a showing of "obviousness . . . can substitute for the pattern of violations ordinarily necessary to establish municipal liability." *Connick*, 563 U.S. at 63.

## 2.     First Incarceration

Plaintiff alleges that Defendants maintained insufficient licensed and trained staff, who in turn: (1) failed to provide timely and appropriate mental health medication support, and (2) classified him to

administrative segregation for no reason other than his status as an inmate with mental health history and needs.  Plaintiff alleges that as a result, he sustained physical and emotional and psychological injury and severe emotional distress.

### a.    Deliberate Indifference: Mental Health Care

Plaintiff alleges that at the time he was booked on August 21, 2018, he had serious mental health needs for which he was seeing a psychiatrist and taking prescribed psychiatric medication.  He alleges that Defendants did not provide him with access to a psychiatrist and/or psychiatric medication.  This Court has observed that:

> A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," *Simmons v. Navajo Cty. Ariz.*, 609 F.3d 1011, 1019 (9th Cir. 2010); *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. *Jett*, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Labs.*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).

*Silas v. Barbosa*, 2024 WL 71729, at *2 (E.D. Cal. Jan. 5, 2024).

As discussed below, the Court finds that Plaintiff has sufficiently raised that he presented at the jail with serious mental health needs.  However, the Court finds that Plaintiff has not raised a trial issue of material fact that Defendants were deliberately indifferent to it.

### (1)    Continuum of Health Care for Jail Detainees

The County, its named agencies and the Hospital Authority jointly provided a continuum of health care for jail detainees.  (Hospital Authority Undisputed Material Fact ("HAUMF") & PLAINTIFF'S RESPONSE 2; Doc. 68 at 41-250; Doc. 81-16 at 2-6.)  Particularly, the County and the Hospital Authority were parties to a Correctional Medicine Agreement that established a continuum of mental health care under state law including coordination and development of policies and practices. (*See id.*; *see also* California Code of Regulations, Title 15, Subchapter 4.)

Defendants proffer evidence that pursuant to the continuum of care: Hospital Authority clinics and infirmaries were staffed by licensed nurses, Behavioral Health psychiatrists attended psychiatric

14

1   sick call, Behavioral Health provided unlicensed staff with sufficient background and education to

2   triage and screen inmates and detainees for psychiatric assessment and medication support, and the

3   County and the Hospital Authority met national and community correctional health standards on the

4   facts of this case.  (*See* CUMF & PLAINTIFF'S RESPONSE  25, 54, 57, 88, 89, 115, ; HAUMF &

5   PLAINTIFF'S RESPONSE 2, 6, 21, 23, 58, 59, 60, 63, 67,  Doc. 59-1 at 6-7; Doc. 71 at 8-9, 17.)

6         Particularly relevant here, the continuum of care included policies for continuation of mental

7   health medication prescribed to inmates being booked into County jail facilities (so called ASAP

8   "AAA" medication, *see* Doc. 68 at 180-82), as well as to inmates being released from jail (so called

9   "Bridge" medication, *see* Doc. 68 at 174-79).  The AAA policy provided for continuation of

10  medication at an inmate's request, whereupon Behavioral Health Licensed personal validated that the

11  inmate had received the medication within 30-45 days prior to last booking, and received verbal

12  telephone orders from a Behavioral Health psychiatrist for the medication.  (Doc. 68 at 180-82.)

13                **(2)**     **Serious Mental Health Needs**

14         The Court finds that Plaintiff has raised a triable issue of material fact that he presented at CRF

15  with serious mental health needs.  A plaintiff "must show a serious medical need by demonstrating

16  that failure to treat [his] condition could result in further significant injury or the unnecessary and

17  wanton infliction of pain."  *Jett*, 439 F.3d at 1096.

18         Consistent with the continuum of care, during Plaintiff's booking at the CRF on August 21,

19  2018, a Hospital Authority intake nurse: conducted a reception medical and mental health screening;

20  initiated the process to confirm Plaintiff's mental health prescriptions and medications; and made a

21  referral to Behavioral Health for mental health screening.  (CUMF & PLAINTIFF'S RESPONSE 25,

22  26, 27, 28, 58, 60, 107, 143;  HAUMF & PLAINTIFF'S RESPONSE 6, 7, 8, 9; *see also* Doc. 59-9 at

23  58, 114-16, 158; Doc. 70 at 179-80; Doc. 75-8 at 21-22.)

24         The intake nurse documented Plaintiff's responses to the jail's medical and mental health

25  questionnaire, his physical and mental presentation, and his unverified medication history.  (*Id.*; *see*

26  *also*  Doc. 59-6 at 2-3; Doc. 75-4 at 15-16.)  Plaintiff did not present drug withdrawal or any medical

27  concerns that were out of the ordinary at the time of booking.  (CUMF & PLAINTIFF'S RESPONSE

28  55, 56, 108.)  Plaintiff had a history of mental health issues including bipolar disorder for which he

1  was being treated by a psychiatrist with psychiatric medication. Even still Plaintiff was oriented and

2  not suicidal at the time of booking.  (CUMF & PLAINTIFF'S RESPONSE 25, 60, 107, 108; HAUMF

3  & PLAINTIFF'S RESPONSE 7, 8, 9; Doc. 67-1 at 76, 144-47.)  Plaintiff  did not present an

4  immediate need for mental health evaluation.  (CUMF & PLAINTIFF'S RESPONSE 28. 32, 33, 39,

5  42, 55, 60, 61, 143; HAUMF & PLAINTIFF'S RESPONSE 7, 8, 9.)

6      Behavioral Health staff reviewed the intake nurse's referral and triaged Plaintiff for a

7  "priority" mental health screening to occur within five days (as provided by the continuum of care

8  where, as here, the need for medication support is unverified).  (CUMF & PLAINTIFF'S RESPONSE

9  28, 61; Doc. 68 at 160-61; *see also* Doc. 75-4 at 19; Doc. 75-10 at 8-9.)  As noted,  Plaintiff disclosed

10  that he was under outside psychiatric care and had an active prescription for psychiatric medication.

11  (CUMF & PLAINTIFF'S RESPONSE 60; Doc. 81-12 at 11, 24)*; see also Kodimer ex rel. Lyn*

12  *Ramskill v. Cnty. of San Diego*, 2010 WL 2635548, at *3 (S.D. Cal. June 30, 2010) (plaintiff had a

13  serious medical need given his chronic paranoid schizophrenia for which he was being treated by a

14  psychiatrist with several prescribed psychiatric medications, and his unusual behavior); *Lee v.*

15  *Scribner*, 2009 WL 1211400, at *8 (E.D. Cal. May 1, 2009) ("Liberally construing Plaintiff's

16  allegations that he was being denied his psychotic medication allows for an inference that Plaintiff had

17  a serious medical (psychiatric) need.").

18      Plaintiff's mental issues affected his daily activities.  For example, when Behavioral Health

19  clinician Martin initially screened Plaintiff on August 26, 2018, he was crying uncontrollably off and

20  on, and complained that he needed his mental health medication Klonopin, a benzodiazepine.  (Doc.

21  59-9 at 60; CUMF & PLAINTIFF'S RESPONSE 150; HAUMF & PLAINTIFF'S RESPONSE 12,

22  19.)  Plaintiff told Martin his depression level was a 10 out of 10, and that "I'm worried I'm going to

23  lose it."  (*Id.*; *see also Silas*,  2024 WL 71729, at *2 (the need for prescription medication is a serious

24  medical need).  Though the County's expert, psychiatrist  Dr. Abrams, opines that Plaintiff did not

25  then have "a serious mental health need for which he required immediate mental health care" (Doc.

26  59-11 at 25), and that Plaintiff  did not experience "any meaningful or serious objective symptoms or

27  serious objective symptoms of substance withdrawal of any sort that required medical, psychiatric or

28  psychological intervention" (Doc. 59-1 at 4), the Court finds that Dr. Abrams' opinion does no more

than place the factual issue of Plaintiff's serious mental health needs in controversy.

Significantly, Plaintiff continued to request his mental health medication. Plaintiff submitted sick call slips for mental health medication on August 23 and 24, 2018. (CUMF & PLAINTIFF'S RESPONSE 31, 59, 116, 117; *see also* Doc. 75-11 at 2-3.) At an August 25, 2018 medical sick call, Plaintiff was advised by a Hospital Authority nurse that his mental health prescription information and medication profile had been received from his pharmacy and provided to Behavioral Health. (HAUMF & PLAINTIFF'S RESPONSE 10, 15; Doc. 75-12 at 23; *see also* CUMF & PLAINTIFF'S RESPONSE 45.) On August 26, 2018 at 1:30 a.m., a KCSO deputy contacted Behavioral Health after Plaintiff reported that he had not been taking his psychiatric medication. (CUMF & PLAINTIFF'S RESPONSE 145.)

Later on the morning of August 26th, Plaintiff received priority medical services at his cell door, where a deputy found him down and unresponsive. (CUMF & PLAINTIFF'S RESPONSE 120, 121, 146; HAUMF & PLAINTIFF'S RESPONSE 11, 13.) Plaintiff awoke, requested his medication, and was advised by medical staff that he first needed to see the doctor. (*Id.*; *see also* CUMF & PLAINTIFF'S RESPONSE 63, 147-51; HAUMF & PLAINTIFF'S RESPONSE 12.) Following the incident, a Hospital Authority nurse medically cleared Plaintiff to remain at the jail, without limitation. (HAUMF & PLAINTIFF'S RESPONSE 13, 73.)

### (3)     Deliberate Indifference to Serious Mental Health Needs

The Court finds that Plaintiff has not raised a triable issue of material fact that Defendants were deliberately indifferent to (i.e. recklessly disregarded) his serious mental health needs. As discussed above, a showing of deliberate indifference requires demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." *Jett*, 439 F.3d at 1096.

The factual record reflects that on August 26, 2018, within the requisite five-day window of his triage rating, Plaintiff was screened by Behavioral Health staff member Martin. During the screening Plaintiff was crying off and on, complained of what felt like extreme medication withdrawal symptoms, and requested his Kloponin. (CUMF & PLAINTIFF'S RESPONSE 63, 149, 150, 151; HAUMF & PLAINTIFF'S RESPONSE 12; *see also* Doc. 68 at 234-35.) Martin concluded that

1  Plaintiff needed to be seen "STAT" by a psychiatrist for medication support assessment.[6]  (CUMF &

2  PLAINTIFF'S RESPONSE 37, 38; Plaintiff's Further Disputed Material Fact ("PFDMF") &

3  COUNTY'S RESPONSE 10; Doc. 59-9 at 100-09; Doc. 68 at 165-85; Doc. 70 at 51; *see also* Doc.

4  81-4 at 17; Doc. 70 at 244-48, 271.)  Martin testified that by "[STAT,]" she meant that Plaintiff should

5  be seen by a psychiatrist as soon as possible for medication support and given his behavior at his cell

6  door earlier that day.  (Doc. 70 at 76-77.)  Martin also testified that she then knew a "STAT" referral

7  to a psychiatrist could mean the inmate would need to be moved to Lerdo.  (Doc. 70 at 49, 82; *see also*

8  Doc. 81-4 at 23-25; Doc. 59-9 at 60, 63.)  Martin's notes from the August 26, 2018 screening further

9  indicate that she intended to request classification deputies transfer Plaintiff to Lerdo the next day so

10  that "he is able to see a psychiatrist for medication support."  (Doc. 70 at 86.)

11      On August 31, 2018, Plaintiff's request for psychiatric medication support was reviewed

12  remotely by Behavioral Health psychiatrist, Dr. Padhy.  A Behavioral Health nurse had contacted Dr.

13  Padhy to confirm the prescription and medication information received from Plaintiff's pharmacy, and

14  for the psychiatrist's assessment of medication support under the AAA policy.  (CUMF &

15  PLAINTIFF'S RESPONSE 44, 45, 46, 47.)  Dr. Padhy was not comfortable prescribing medication

16  because Plaintiff had been off Klonopin (a "Benzo") for 10 days; Dr. Pahdy deferred the matter for in-

17  person assessment by a psychiatrist.  (CUMF & PLAINTIFF'S RESPONSE 45,  46, 67; HAUMF &

18  PLAINTIFF'S RESPONSE 20; *see also* Doc. 67-1 at 143, 155; Doc. 59-9 at 71; Doc. 69 at 41

19  [regarding Behavioral Health's policy on use of Benzodiazepines].)  Absent a psychiatrist's approval,

20  the Hospital Authority, which under the continuum of care was charged with administering prescribed

21  mental health medication, was not authorized to medicate Plaintiff.  (CUMF & PLAINTIFF'S

22  RESPONSE 43.)

23      Also on August 31, 2018, Plaintiff was reclassified to general population and transferred to

24  Lerdo in order to be seen "STAT" by a Behavioral Health psychiatrist on September 5, 2018.

25  (CUMF & PLAINTIFF'S RESPONSE  65, 66, 69, 152, 153; HAUMF & PLAINTIFF'S RESPONSE

---

26  [6] The Behavioral Health policy for psychiatric sick call provides for psychiatric assessment by a psychiatrist to be
    scheduled: (1) immediately ("STAT"), (2) as soon as available (ASAP), or (3) first available date ("FAD").  (Doc. 68 at
27  185).  The Behavioral Health Assessment (Screening) Policy provides that this timeframe for psychiatrist sick-call is
    modeled on current community standard practices (Doc. 68 at 166), upon which Dr. Abrams opines as discussed herein
28  (see Doc. 59-1 at 6-7).

17, 18, 21, 22; *see also* Doc. 67-1 at 153-54.)  However, Plaintiff was released from custody on September 4, 2018, without being seen by the psychiatrist.  (CUMF & PLAINTIFF'S RESPONSE 70, 154; HAUMF & PLAINTIFF'S RESPONSE 22.)

The Court finds that Plaintiff has not raised a triable issue of material fact that Defendants recklessly disregarded his serious mental health needs.  Defendants' response to Plaintiff's possible need for continuation of prescribed mental health medication, which in included AAA verification of his pharmacy information, a mental health screening, scheduling a "STAT" psychiatric assessment, medication support assessment by psychiatrist Dr. Padhy, and reclassification and transfer to Lerdo for a "STAT" in-person appointment with a psychiatrist, was consistent with the continuum of care and community standard practices upon which the continuum of care was modelled.  (Doc. 59-1 at 6-7; Doc. 71 at 12, 16; CUMF & PLAINTIFF'S RESPONSE 37, 38, 57, 68, 89; *see also* Doc. 68 at 160-87.)

To the extent Plaintiff argues that he was not seen immediately (i.e. "STAT") for medication support assessment following Behavioral Health nurse's validation of the August 25, 2018 prescription and medication information received from the pharmacy, he does not point to supporting facts in the record.  Instead, the record reflects the uncontroverted opinion of the County's expert Dr. Abrams that Behavioral Health's noted response was consistent with the continuum of care and national and community standards upon which the scheduling was based.  (Doc. 59-1 at 6-7; *see also* Doc. 68 at 180-83; Doc. 71 at 12, 16); *Warner v. Velardi*, 2018 WL 3853943, at *5 (S.D. Cal. Aug. 14, 2018), *report and recommendation adopted*, 2018 WL 5829972 (S.D. Cal. Nov. 6, 2018) (a mere delay in medical care (without more) is insufficient to constitute an Eighth Amendment violation); *Staggs v. Doctor's Hosp. of Manteca, Inc.*, 2012 WL 1084923, at *4 (E.D. Cal. Mar. 29, 2012) (a mere delay in receiving medical treatment, without more, does not constitute "deliberate indifference," unless the plaintiff can show that the delay caused serious harm to the plaintiff).

Additionally, Plaintiff does not raise a triable issue of material fact that he sustained physical, emotional, and psychological injury and severe emotional distress from not receiving prescription mental health medication.  Dr. Padhy, in his medical judgment and discretion, reviewed and declined Plaintiff's request for mental health medication pending in-person assessment by a psychiatrist.  Also,

19

1  notwithstanding his serious mental health issues, Plaintiff did not demonstrate drug withdrawal at the

2  time of booking (CUMF & PLAINTIFF'S RESPONSE 55, 56, 90), or at the time of release on

3  September 4, 2018, when he was fully detoxified (CUMF & PLAINTIFF'S RESPONSE 71).

4          **b.      Deliberate Indifference: Classification to Administrative Segregation**

5          Plaintiff alleges that Defendants were deliberately indifferent to his serious mental health

6  needs by classifying him to administrative segregation solely on that basis for six days of his fourteen-

7  day first period of incarceration.  Plaintiff alleges that he was classified to administrative segregation

8  solely on grounds he was an inmate with mental health history and needs, to isolate and punish him,

9  reduce monies spent on health care in the jails, and deny him mental health care.

10         However, the Court finds that Plaintiff has not raised a triable issue of material fact that

11  Defendants classified him to administrative segregation on the basis that he was an inmate with mental

12  health history and needs including to isolate and punish him and reduce jail costs and deny mental

13  health care.[7]

14                  **(1)      Administrative Segregation for Disruptive Behavior**

15          The factual record shows that Plaintiff initially was classified to general population

16  notwithstanding his referral to Behavioral Health for mental health screening and medication support.

17  (CUMF & PLAINTIFF'S RESPONSE  144; see also id. 135, 136, 148.)  Plaintiff was reclassified to

18  administrative segregation by KCSO due to his disruptive behavior during an incident at his cell door

19  on August 26, 2018, five days after he was booked in to the general population and referred for mental

20  health screening.  (CUMF & PLAINTIFF'S RESPONSE 62, 147, 148; HAUMF & PLAINTIFF'S

21  RESPONSE 14.)  In that incident, Plaintiff became upset regarding his noted request for medication

22  support.  (CUMF & PLAINTIFF'S RESPONSE 62, 144, 147, 148; HAUMF & PLAINTIFF'S

23  RESPONSE 13; *see also* Doc. 59-9 at 32-33; Doc. 81-4 at 22.)  Plaintiff concedes his behavior that

24  day related to his being "upset" (*see* CUMF & PLAINTIFF'S RESPONSE 148), although he surmises

25  he might have displayed disruptive behavior due to a leg infection and withdrawal from medications

26  (*id.*; *see also* Doc. 59-10 at 108-09).

27  _____

[7] A pretrial detainee need not prove an individual defendant's "subjective intent to punish" in the context of a deliberate indifference to serious medical needs claim, but rather reckless disregard.  *See Castro*, 833 F.3d at 1070 (addressing

28  pretrial detainee's deliberate indifference to safety claim).

1      The record reflects that the KCSO classification department determines inmate classification

2  and housing based upon consideration of various factors including an inmate's behavior, medical and

3  mental condition, circumstances of the crime, information provided by the inmate, and escape history.

4  (CUMF & PLAINTIFF'S RESPONSE 48, 132, 133, 134, 135,  164, 168, 171, 174; *see also* Doc. 59-9

5  at 41-44); California Code of Regulations, Title 15, Subchapter 4.  The County's noted detention

6  policies state that administrative segregation is a tool for facility administrators to maintain safety,

7  security, order and control of the jails.  (*Id.*)  Inmates are eligible for administrative segregation on a

8  number of bases including as relevant here, if an inmate is determined prone to disruptive behavior.

9  (CUMF & PLAINTIFF'S RESPONSE 135, 136, 170, 171; *see also Hernandez v. Johnson*, 833 F.2d

10  1316, 1318 (9th Cir. 1987) (pretrial detainees have "no constitutional right to a particular classification

11  status."); *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (the Due Process Clause of the Fourteenth

12  Amendment does not confer upon an inmate a liberty interest in remaining within the general prison

13  population).

14      The KCSO classification department does not have access to inmate mental health records.

15  (CUMF & PLAINTIFF'S RESPONSE 165.)  Though the KCSO classification department typically

16  contacts Behavioral Health daily for input relevant to inmate housing (CUMF & PLAINTIFF'S

17  RESPONSE 164, 175), Plaintiff proffers no facts that the KCSO classification department did so in

18  deciding to classify him to administrative segregation.  Moreover, Behavioral Health only can make

19  recommendations as to where inmates are housed (CUMF & PLAINTIFF'S RESPONSE 48) and here

20  again, Plaintiff does not proffer evidence that Behavioral Health did so here.  Instead, the proffered

21  testimony of County staff in this case is consistent with the above noted detention policy.  Behavioral

22  Health staff member Martin testified that assignment to administrative segregation was based upon

23  "behaviors."  (Doc. 75-4 at 11).  Behavioral Health specialist  Michelle Cully testified that

24  administrative segregation was used for "various different reasons, not necessarily specifically for

25  mental health . . . it depends what would be in the best interests of the inmate."  (Doc. 75-5 at 4.)

26  Behavioral Health staff member Anderson testified that inmates with mental health issues are not

27  routinely housed in administrative segregation.  (Doc. 75-10 at 10.)

28      Plaintiff does not proffer any evidence that his classification to administrative segregation was

motivated by an intent to punish him for his serious mental health needs.  Though the Fourteenth

Amendment protects pretrial detainees from conditions that amount to punishment, *see Bell v. Wolfish*,

441 U.S. 520, 536-37, 545 (1979), the detainee must show that the action was expressly intended to

punish or that the action served an alternative, non-punitive purpose but was " 'excessive in relation to

the alternative purpose.' " *Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (quoting *Bell*, 441

U.S. at 538); *see also Hatter v. Dyer*, 154 F. Supp. 3d 940, 945 (C.D. Cal. 2015) ("Unless there is

evidence of intent to punish, then those conditions or restrictions that are reasonably related to

legitimate penological objectives do not violate a pretrial detainee's right to be free from

punishment.") (citing *Block v. Rutherford*, 468 U.S. 576, 584 (1984)).  If a plaintiff can show that his

housing placement has the "purpose and effect" of unconstitutional punishment, he can establish a

substantive due process violation.  *Mitchell v. Dupnik*, 75 F.3d 517, 524 (9th Cir. 1996).  Such a

plaintiff must show that his housing classification: (1) caused him to suffer some harm or disability,

and (2) the purpose of the classification was to punish the detainee.  *Demery*, 378 F.3d at 1029 (citing

*Bell*, 441 U.S. at 538).  In this case, Plaintiff's allegations that the KCSO classified him to

administrative segregation pursuant to a policy of isolating and punishing inmates with mental health

history and needs, and that he was harmed thereby are conclusions that are not supported in the factual

record.  *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) ("A summary judgment motion cannot

be defeated by relying solely on conclusory allegations unsupported by factual data.").

Relatedly, Plaintiff neither alleges nor raises a triable issue of material fact that Defendants'

failure to document health screening for, and monitoring, in administrative segregation constitutes

deliberate indifference to his serious mental health needs.  (Doc. 35; HAUMF & PLAINTIFF'S

RESPONSE 77; PFDMF & HA'S RESPONSE 53, 54, 55, 56, 57, 58); *see also Gordon v. Cnty. of

Orange,* 6 F.4th 961, 972 (9th Cir. 2021) (citing *Sandoval*, 985 F.3d at 679-80, discussing *Jett*, 439

F.3d at 1097-98) ("[A] prison official who is aware that an inmate is suffering from a serious acute

medical condition violates the Constitution when he stands idly by rather than responding with

reasonable diligence to treat the condition.").  The Second Amended Complaint does not allege

deliberate indifference by failure to screen for and monitor in administrative segregation.  (Doc. 35);

*see also Cotta v. Cnty. of Kings*, 686 F. App'x 467, 469 (9th Cir. 2017) (citing *Navajo Nation v. U.S.*

1    *Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008)) ("[O]ur precedents make clear that where, as here,

2    the complaint does not include the necessary factual allegations to state a claim, raising such claim in

3    a summary judgment motion is insufficient to present the claim to the district court.").  Moreover,

4    assertion that Defendants failed to screen Plaintiff for administrative segregation is inconsistent with

5    the Second Amended Complaint's claim that *all* inmates with mental health history and needs were

6    classified into administrative segregation on that basis.  (Id.; see also PLAINTIFF'S RESPONSE to

7    CUMF 1, 2, 6, 7, 16, 17, 135, 136, 148, 167, 168, 170, 171, 174, 179; HAUMF & PLAINTIFF'S

8    RESPONSE 78; PADMF & COUNTY'S RESPONSE 4, 5, 6.)

9        Plaintiff does not proffer evidence that classification to administrative segregation was

10   incompatible with or denied, delayed, or interfered with access to care and treatment of his serious

11   mental health needs.  (*See* section IV C 2 a, ante.)  For example, Behavioral Health staff saw Plaintiff

12   in administrative segregation the very day he was placed there and did not recommend any change to

13   or restriction upon his housing.  (Doc. 59-9 at 60-68.)  During Plaintiff's time in administrative

14   segregation, Behavioral Health clinician Martin facilitated Plaintiff's transfer to Lerdo for a "STAT"

15   appointment with a Behavioral Health psychiatrist for medication support, as discussed above.  (*See*

16   section IV C 2 a, ante.)  Plaintiff concedes that inmates in administrative segregation are not limited in

17   the personal property they can have relative to general population inmates.  (CUMF & PLAINTIFF'S

18   RESPONSE 178.)  Also, on the undisputed facts, Plaintiff was fully detoxified at the time of his

19   release.  (CUMF & PLAINTIFF'S RESPONSE 71.)  Even if Defendants failed to document in

20   Plaintiff's health records that he was screened for and monitored in administrative segregation, this

21   lack of documentation does not alone demonstrate deliberate indifference to his serious mental health

22   needs.  *Russell v. Lumitap*, 31 F.4th 729, 742 (9th Cir. 2022) (there is no § 1983 liability for simply

23   acting contrary to prison policy); *Gordon*, 6 F.4th at 972 ("[A] prison official who is aware that an

24   inmate is suffering from a serious acute medical condition violates the Constitution when he stands

25   idly by rather than responding with reasonable diligence to treat the condition.").

26       Plaintiff does not raise a triable issue of material fact that his classification to administrative

27   segregation was deliberately indifferent to his serious mental health needs on grounds the

28   classification was intended to or had the effect of reducing costs of housing inmates with mental

1   health history and needs.  As discussed above, Plaintiff was classified to administrative segregation

2   due to his behavior on August 26, 2018.  *See e.g.*, *Pierce v. County of Orange,* 526 F.3d 1190, 1205

3   (9th Cir. 2008) (quoting *Bell,* 441 U.S. at 540 n. 23) (legitimate non-punitive governmental objectives

4   include maintaining security and order and operating the detention facility in a manageable fashion).

5   Plaintiff offers no evidence that housing inmates in administrative segregation yields a cost savings to

6   the County.  Instead, the record reflects that inmates in administrative segregation with mental health

7   history and needs do not receive less frequent security and welfare checks than other inmates.  (CUMF

8   & PLAINTIFF'S RESPONSE 180)  Nor are inmates in administrative segregation denied access to

9   programs and services available to inmates not in administrative segregation, except as necessary to

10  protect inmates and staff.  (*Id.*; *see also* CUMF & PLAINTIFF'S RESPONSE 178.)

11       Finally, Plaintiff does not provide evidence that his classification to administrative segregation

12  denied, delayed, or interfered with mental health treatment or otherwise caused him constitutional

13  harm.  The undisputed facts are that health services were available to all inmates including those with

14  mental health history and needs and assigned to administrative segregation.  (CUMF & PLAINTIFF'S

15  RESPONSE 31, 32, 106; 109, 135; Doc. 75-5 at 9.)  As discussed above, Plaintiff received medical

16  and/or mental health services at least every other day pursuant to and consistent with the continuum of

17  care monitoring requirements, while he was in administrative segregation.  (*See* section IV C 2 a, *ante*;

18  *see also* CUMF & PLAINTIFF'S RESPONSE 37, 38, 57, 68, 89, 113, 181; HAUMF &

19  PLAINTIFF'S RESPONSE 50, 57-73; Doc. 59-1 at 6-7; Doc. 67-1 at 74; Doc. 68 at 103, 160-87, 234;

20  Doc. 70 at 98; Doc. 71 at 8-16; Doc. 81-4 at 28;.Doc. 81-12 at 54-56.)  Plaintiff has not submitted

21  evidence that he was denied programs and services while in administrative segregation.

22                 **c.    *Monell* Liability**

23       Plaintiff alleges that Defendants, by official policy, rule, custom or usage, or the

24  acts/omissions of their officials under color of law, violated his constitutional rights. However,

25  Plaintiff has not demonstrated evidence of deliberate indifference to his serious mental health needs as

26  to either the mental health care provided or his classification to administrative segregation, for the

27  reasons stated.  *See Jett*, 439 F.3d at 1096.  Absent deprivation of a constitutional right, there is no

28  liability under *Monell*.  *See Mabe*, 237 F.3d at 1110-11.

Even if Plaintiff had raised a triable issue of material fact on this basis, he has not demonstrated that Defendants' deliberate indifference was pursuant to a policy, custom, practice, or the acts/omissions of their officials under color of law, under the *Monell* standard.  Plaintiff has not submitted evidence of any express policy of Defendants, which was deliberately indifferent to his constitutional rights, as discussed above.  (*See* section IV C 2 a, ante.)  Additionally, Plaintiff has not shown that the alleged deliberate indifference was of sufficient duration, frequency and consistency to show the conduct had become "a traditional method of carrying out policy."  *Trevino*, 99 F.3d at 918.  Plaintiff's allegations of deliberate indifference in provision of mental health care relating to a single incident where he experienced delay in AAA medication support of ten days at most fall short of a "traditional method of carrying out policy."  *Id.*; *see also J.M. by & through Rodriguez v. Cty. of Stanislaus*, 2018 WL 5879725, at *5 (E.D. Cal. Nov. 7, 2018) (various incidents, generally more than one or two, may permit the inference of a policy, "taking into account their similarity, their timing, and subsequent actions by the municipality."); *Gordon,* 6 F.4th at 974 (no *Monell* liability where the record lacks evidence of any other event involving similar conduct or constitutional violations); *Nyarecha v. Cnty. of Los Angeles*, 2024 WL 4511616, at *2 (9th Cir. Oct. 17, 2024) (a series of 26 separate constitutional violations during a 13 hour period by multiple deputies found sufficient to show a custom or practice under *Monell*).  Plaintiff fails entirely to demonstrate multiple similar incidents as a basis to infer a "traditional method of carrying out policy" of indifference to mental health medication support.  *Trevino*, 99 F.3d at 918.

Similarly, Plaintiff's allegations of deliberate indifference by classifying him alone to administrative segregation as a result of the single behavioral incident on August 26, 2018 fall short of a "traditional method of carrying out policy."  *Trevino*, 99 F.3d at 918; *Gordon,* 6 F.4th at 974.  Plaintiff again fails to demonstrate other similar incidents as a basis to infer a "traditional method of carrying out policy" that classifies all mental health inmates to administrative segregation solely on that basis.  *Id.*  Plaintiff's reliance upon the testimony of Defendant Walker, Behavioral Health's then CEO, that KCSO, an agency of the County separate from Behavioral Health, used a "segregation model" is not such evidence, even inferentially.  (Doc., 75-6 at 25; CUMF & PLAINTIFF'S RESPONSE 135, citing Doc. 75-6 at 12, 26, 28, 30, 47.)  The undisputed record reflects that Walker

testified only that KCSO "segregated some of their population with mental health history and needs." (Doc. 75-6 at 26; *see also* CUMF & PLAINTIFF'S RESPONSE 135.)  Plaintiff has not shown that KCSO classified all inmates with mental health history and needs to administrative segregation solely on that basis.  (CUMF & PLAINTIFF'S RESPONSE 1, 2, 3, 4, 135; *see also* COUNTY'S REPLY to PLAINTIFF'S RESPONSE 1, Doc. 79-2 at 2:5-8; Doc. 59-10 at 16; Doc. 70 at 72, 267; Doc. 75-4 at 10-11; Doc. 75-5 at 4; Doc. 75-6 at 4-5; Doc. 75-10 at 10; Doc. 75-14 at 9; Doc. 81-5 at 4.)  Plaintiff's assertion that in 2016 an unspecified number of inmates with mental health history and needs may have been housed in administrative segregation at Lerdo, falls short of raising a triable issue of material fact that KCSO classified all inmates with mental health history and needs to administrative segregation.  (*See* Doc. 75-4 at 10; Doc. 75-5 at 4-9.)

More generally, the noted undisputed facts in this case belie the custom or policy asserted by Plaintiff. For example, Plaintiff was reclassified from administrative segregation to general population because of his mental health history and needs, and in order to facilitate mental health assessment and medication support.  (CUMF & PLAINTIFF'S RESPONSE 65, 66, 69, 152, 153, 154; HAUMF & PLAINTIFF'S RESPONSE 17, 18, 21, 22; *see also* Doc. 67-1 at 153-54.)  Thereupon, Plaintiff remained in the general population until his release.  (CUMF & PLAINTIFF'S RESPONSE 70, 154; HAUMF & PLAINTIFF'S RESPONSE 18, 22.)

Finally, Plaintiff falls short of demonstrating "a pattern of similar constitutional violations by untrained employees[,]" *Connick*, 563 U.S. at 62, or that the alleged violations were the obvious result of a lack of training, for the reasons stated.  *Id.* at 63.  Plaintiff also fails to identify which employees were inadequately trained or how specifically the inadequacies of those employees' training "amount[ed] to deliberate indifference" in this case.  *Connick*, 563 U.S. at 62.  Plaintiff does not raise a triable issue of material fact that unlicensed Behavioral Health staff who conducted his mental health screenings were unqualified or untrained on policies relating to medication because the undisputed factual record reflects that matters of medication were outside unlicensed staff members' scope of practice.  (Doc. 75-4 at 27.)  As noted above, the uncontroverted opinion of the County's expert, Dr. Abrams, is that Behavioral Health staff members were qualified and competent as to their background and education.  (Doc. 59-1 at 6-7.)  The Hospital Authority's expert, Ms. Pearson, offered

her uncontroverted opinion that the County's framework for supplemental mental health training met state law requirements.  (HAUMF & PLAINTIFF'S RESPONSE 51, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 67, 71; Doc. 71 at 12, 16.)

### d.    Individually Named Defendants

Plaintiff brings claims against individual Defendants Youngblood, Davis, and Walker, for actions and omissions in their capacities as public employees under color of law. Plaintiff's official capacity allegations against the individual Defendants duplicate the *Monell* allegations discussed above.  Official capacity actions against local government official are unnecessary following *Monell*. *See Luke v. Abbott*, 954 F. Supp. 202, 203 (C.D. Cal. 1997) (citing *Monell,* 436 U.S. at 690 n.55) ("Official capacity suits are generally another way of pleading an action against an entity of which the officer is an agent.").

To the extent Plaintiff names any individual Defendant in a personal capacity, he does not raise a triable issue of material fact that these Defendants are linked to the alleged constitutional deprivations.  *See Franco v. Gennaco*, 2009 WL 10698471, at *1 (C.D. Cal. Aug. 12, 2009) (citing *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)) ("Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law.").  The Ninth Circuit has announced an objective deliberate indifference standard is applicable to pretrial detainee claims against individual defendants for claims under the Fourteenth Amendment and explained that the elements of such a claim are: (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined, (2) those conditions put the plaintiff at substantial risk of suffering serious harm, (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved - making the consequences of the defendant's conduct obvious, and (4) by not taking such measures, the defendant caused the plaintiff's injuries.  *Deloney v. Cnty. of Fresno*, 2019 WL 1875588, at *5-6 (E.D. Cal. Apr. 26, 2019) (citing *Gordon v. County of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018)); *see also Anthony v. Cnty. of Santa Clara*, 2021 WL 1786338, at *7 (N.D. Cal. May 5, 2021) ("A supervisory official may be held liable under Section 1983 only "if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal

connection between the supervisor's wrongful conduct and the constitutional violation."); *see also Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) ("The requisite causal connection can be established . . . by setting in motion a series of acts by others or by knowingly refus[ing] to terminate a series of acts by others, which [the supervisor] knew or reasonably should have known would cause others to inflict a constitutional injury."); *Rodriguez v. County of Los Angeles*, 891 F.3d 776, 798 (9th Cir. 2018) (quoting *Starr*, 652 F.3d at 1207-08).

Here, the Court finds on the undisputed record that the individual Defendant did not know of or participate in Plaintiff's incarceration, care, and treatment.[8]  (*See* CUMF & PLAINTIFF'S RESPONSE 1, 2, 3, 4; Doc. 59-3 at 2 re Defendant Walker; CUMF & PLAINTIFF'S RESPONSE 5, 6, 7, 8, 9, 10, 11, 12, 13, 14 re Defendant Youngblood; CUMF & PLAINTIFF'S RESPONSE 15, 16, 17, 18, 19, 20, 21, 22, 23, 24 re Defendant Davis); *see also Monell.*, 436 U.S. at 694 (Section 1983 requires that there be an actual connection or link between the actions of Defendants and the constitutional deprivations alleged to have been suffered by Plaintiff).

As the Ninth Circuit has observed, "[d]eliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  "If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk." *Id*.; *see also L.W. v. Grubbs*, 92 F.3d 894, 899 (9th Cir.1996) (the state actor must "recognize[ ][an] unreasonable risk and actually intend[ ] to expose the plaintiff to such risks without regard to the consequences to the plaintiff."); *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1988) ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."); *Chavez v. Villanueva*, 699 F. Supp. 3d. 844, 860 (C.D. Cal. 2023) (supervisor liability under § 1983 requires personal involvement or sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation).

---

[8] Given Plaintiff's failure to raise a triable issue of material fact that the individual Defendants violated his constitutional rights, the Court does not reach Defendants' claim of qualified immunity.  (*See* Doc. 40 at 4, 5); *see also Gordon*, 6 F.4th at 968 (citing *Saucier v. Katz*, 533 U.S. 194, 200–01 (2001) *overruled in part by Pearson v. Callahan*, 555 U.S. 223, 236 (2009) (qualified immunity considers whether: (1) the state actor's conduct violated a constitutional  right and (2) the right was clearly established at the time of the alleged misconduct - either question may be addressed first, and if the answer to either is "no," then the state actor cannot be held liable for damages).

### 3.    Second Incarceration

As he did above, Plaintiff alleges that Defendants maintained insufficient licensed and trained staff, who in turn: (1) failed to provide timely and appropriate mental health medication support, and (2) classified him to administrative segregation for no reason other than his status as an inmate with mental health history and needs.  Plaintiff alleges that as a result, he sustained physical and emotional and psychological injury and severe emotional distress.

#### a.    Deliberate Indifference: Mental Health Care

#### (1)    Continuum of Health Care for Jail Detainees

The County, its named agencies and the Hospital Authority jointly provided a continuum of health care for jail detainees, as discussed above.  (*See* section IV C 2 a (1), ante.)

#### (2)    Serious Mental Health Needs

The Court finds that Plaintiff has raised a triable issue of material fact that he presented at the jail with serious mental health needs.  As above, a plaintiff "must show a serious medical [mental health] need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  *Jett*, 439 F.3d at 1096.

Consistent with the continuum of care, during Plaintiff's booking at the CRF on October 20, 2018, a Hospital Authority intake nurse conducted a reception medical and mental health screening and made a referral to Behavioral Health for mental health screening and treatment.   (CUMF & PLAINTIFF'S RESPONSE 72, 139, 155, 156; *see also* Doc. 59-5 at 3; Doc. 67-1 at 70; HAUMF & PLAINTIFF'S RESPONSE 23, 24, 25; Doc. 81-8 at 11; Doc. 81-12 at 19; *see also Kodimer ex rel. Lyn Ramskill,* 2010 WL 2635548, at *3.)  The intake nurse documented that Plaintiff was alert, oriented, not suicidal, and had a history of depression with medication.  (HAUMF & PLAINTIFF'S RESPONSE 23, 24; PAMF & HA'S RESPONSE 24; Doc,. 81-12 at 19; *see also* Doc. 67-1 at 71.)

Unlike during the first incarceration, the intake nurse did not document Plaintiff's disclosure of an active prescription for mental health medication or that Plaintiff was seeking continuation of mental health medication.  (Doc. 67-1 at 71.)  The record does not show that Behavioral Health triaged the intake nurse's referral for psychiatric assessment of medication support.  Plaintiff, however, asserts that he did discuss "bridge" medication with unidentified booking officials and that he told them of his

1  pharmacy, "Wise Buys[.]" (PADMF & COUNTY'S RESPONSE 24; PADMF & HA'S RESPONSE

2  24; Doc. 75-8 at 11.)  In his testimony, Plaintiff asserts that during the intake screening, he went

3  through the "same process; same talk about a bridge; same talk about Wise Buys . . . [and] was told

4  three to five days. . ." (*See* Doc. 75-8 at 11.) The Court finds that Plaintiff's testimony is sufficient to

5  raise a triable issue of material fact that he was being treated by a psychiatrist with prescription

6  medication and was requesting continuation of medication in jail and therefore had serious mental

7  health needs.  (*See* Doc. 68 at 180-82); *see also Kodimer ex rel. Lyn Ramskill*, 2010 WL 2635548, at

8  *3.

9         Additionally, Plaintiff's mental issues affected his daily activities.  For example, when

10  Behavioral Health staff member Michael Anderson conducted a mental health screening on November

11  16, 2018, Plaintiff was upset and tearful, telling Anderson that his depression and anxiety were 10 out

12  of 10; that he was sleeping only about an hour a day; and that he had been taking medication for these

13  symptoms, medications which he then described to Anderson.  (CUMF & PLAINTIFF'S RESPONSE

14  74;  HAUMF & PLAINTIFF'S RESPONSE 30; *see also* Doc. 59-9 at 73-76.)  The Court finds the

15  opinion of the County's expert psychiatrist  Dr. Abrams that upon referral to Behavioral Health: (1)

16  Plaintiff did not have "a serious mental health need for which he required immediate mental health

17  care" (Doc. 59-11 at 25), (2) Plaintiff  did not experience "any meaningful or serious objective

18  symptoms or serious objective symptoms of substance withdrawal of any sort that required medical,

19  psychiatric or psychological intervention" (Doc. 59-1 at 4), and (3) Plaintiff had no meaningful

20  physiological substance addiction or indication for continued AAA psychiatric medication in October

21  2018 (CUMF & PLAINTIFF'S RESPONSE 73; Doc. 81-12 at 19) - does no more than place the

22  material factual issue of Plaintiff's serious mental health needs in controversy (*id.; see also* CUMF &

23  PLAINTIFF'S RESPONSE  49, 50, 51, 52, 53, 54, 83-90).

24                    **(3)      Deliberate Indifference to Serious Mental Health Needs**

25         The Court finds Plaintiff has raised a triable issue of material fact that Defendants were

26  deliberately indifferent to his serious mental health needs during the period spanning his October 20,

27  2018 booking to November 15, 2018.  As noted, a showing of deliberate indifference requires

28  demonstrating "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need

1  and (b) harm caused by the indifference. *See Jett*, 439 F.3d at 1096. During October 20, 2018 to

2  November 15, 2018, Defendants did not comply with the continuum of care regarding AAA

3  medication verification and assessment for medication support. (Doc. 68 at 165, 180-82.) The intake

4  nurse did not initiate the process for requesting Plaintiff's prescription and medication information

5  from his pharmacy in order to verify it. (*Id.*) Behavioral Health did not triage Plaintiff's referral for

6  mental health screening and assessment of medication support. (*Id.*) Behavioral Health did not

7  complete that screening and assessment as required by the noted AAA medication policy.[9] (*Id.*)

8      The Court finds a triable issue that Plaintiff's booking referral should have triggered the AAA

9  verification process and triage for priority mental health screening for medication support. (CUMF &

10 PLAINTIFF'S RESPONSE 72, 139, 155, 156; *see also* Doc. 59-5 at 3; Doc. 67-1 at 70; Doc. 68 at

11 165, 180-82; HAUMF & PLAINTIFF'S RESPONSE 23, 24, 25; Doc. 81-8 at 11; Doc. 81-12 at 19.)

12 For example, Defendants were chargeable at booking with knowledge of Plaintiff's serious mental

13 health needs, even if Plaintiff did not request mental health medication in the numerous sick call slips

14 he submitted following his October 20, 2018 booking up to November 15, 2018. (*See e.g.*, CUMF &

15 PLAINTIFF'S RESPONSE 124, 125, 126; HAUMF & PLAINTIFF'S RESPONSE 26.)

16     Defendants did not respond to Plaintiff's serious needs for assessment of medication support

17 until November 15, 2018, when a Hospital Authority nurse began the medication verification process.

18 (HAUMF & PLAINTIFF'S RESPONSE 27, 28, 29.) Behavioral Health staff delayed psychiatric

19 screening of Plaintiff until November 16, 2018, well beyond even the aspirational fourteen-day

20 window provided by the continuum of care for routine mental health screening not involving

21 medication support. (*See* Doc. 68 at 169; CUMF & PLAINTIFF'S RESPONSE 33, 74; HAUMF &

22 PLAINTIFF'S RESPONSE 67.)

23     Notwithstanding the foregoing, the Court finds Plaintiff has not raised a triable issue of

24 material fact that Defendants were deliberately indifferent to his serious mental health needs during

25 the period November 15, 2018 to his release from custody on December 20, 2018, as discussed below.

26 *See e.g., Cravotta v. Cnty. of Sacramento*, 2024 WL 645705, at *5 (E.D. Cal. Feb. 15, 2024) (citing

27

28 ───────────────
[9] This is so even though Plaintiff has not proffered facts that his electronic health records from his First Incarceration supported continuation of validated AAA medication. (Doc. 68 at 165, 180-82; Doc. 81-12 at 11.)

*Castro*, 833 F.3d at 1071) ("[P]laintiff must "prove more than negligence but less than subjective intent - something akin to reckless disregard."); *Estelle*, 429 U.S. at 105-06). On November 15, 2018, Plaintiff was seen by a Hospital Authority nurse on a request for medical help and he indicated to the nurse that he had been on bipolar medication. (HAUMF & PLAINTIFF'S RESPONSE  27, 28, 29.) The Hospital Authority nurse began the process of verifying Plaintiff's prescription and medication information, contacting Plaintiff's pharmacy on November 16, 2018. (*Id.*) Also on November 16, 2018, Behavioral Health staff member Anderson conducted an initial mental health screening of Plaintiff based on the October 20, 2018 booking referral. (Doc. 59-9 at 73-76; Doc. 67-1 at 157; CUMF & PLAINTIFF'S RESPONSE 74; HAUMF & PLAINTIFF'S RESPONSE 30; PAMF & COUNTY'S RESPONSE 29, 31; PAMF & HA'S RESPONSE 29, 31.) Anderson found Plaintiff in serious need. Plaintiff was upset, tearful, depressed, anxious, and unable to sleep. (*Id.*) Plaintiff described his mental health medications to Anderson. (*Id.*; *see* Doc. 59-9 at 73-76.) Anderson reviewed the information from Plaintiff's First Incarceration contained in his electronic medical records.[10] (*Id.*; *see also* CUMF & PLAINTIFF'S RESPONSE 36, 42.)

Anderson also requested Plaintiff's prescription and medication information from his pharmacy. (Doc. 59-9 at 76; CUMF & PLAINTIFF'S RESPONSE 75; HAUMF & PLAINTIFF'S RESPONSE 29.) Anderson recommended that Plaintiff be seen "STAT" by a psychiatrist. (Doc. 75-10 at 18; *see also* CUMF & PLAINTIFF'S RESPONSE 74; HAUMF & PLAINTIFF'S RESPONSE 30; PAMF & COUNTY'S RESPONSE 29, 31; PAMF & HA'S RESPONSE 29, 31.) Like Behavioral Health staff member Martin before him, Anderson testified that by "STAT" he meant that Plaintiff should be seen by a psychiatrist as soon as one was available to see an inmate needing mental health services. (Doc. 75-10 at 11-12.) Anderson testified that in this case, he meant that Plaintiff was to be "placed on the list to be seen by the doctor." (Doc. 75-10 at 15.)

On November 19, 2018, Plaintiff's pharmacy prescription and medication information was received by Hospital Authority staff. (HAUMF & PLAINTIFF'S RESPONSE 34.) Two days later, Hospital Authority staff sent the information to Behavioral Health. (*Id.*) Plaintiff was then scheduled to see a Behavioral Health psychiatrist on November 30, 2018. (PAMDF & HA'S RESPONSE 33;

---

[10] See n.9.

Doc. 59-9 at 78-80) but was not seen on that day due to "time constraints." (*Id.*; *see also* Doc. 67-21 at 156.)  Plaintiff's appointment was rescheduled for December 6, 2018. (*See* Doc. 59-9 at 81-87.)

On November 26, 2018, Plaintiff was seen by Hospital Authority staff on medical complaints and on mental health complaints of not having bipolar medication for 37 days.  (HAUMF & PLAINTIFF'S RESPONSE 35.)  On November 27, 2018, the Hospital Authority issued a secondary mental health referral to Behavioral Health.  (HAUMF & PLAINTIFF'S RESPONSE 36.)  As of November 27, 2018, Behavioral Health staff member Anderson was aware that Plaintiff was complaining that his anxiety was increasing; that he was decompensating and suffering multiple panic attacks; and that he felt he could not function much longer.  (Doc. 59-9 at 78.) On December 6, 2018, Plaintiff was seen by Behavioral Health psychiatrist Dr. Worrell.  (Doc. 59-9 at 81-87.) Dr. Worrell diagnosed Plaintiff with bipolar, anxiety and substance use disorders, and prescribed medication, which the Hospital Authority then administered.  (CUMF & PLAINTIFF'S RESPONSE 76, 77, 78; PAMDF & COUNTY'S RESPONSE 36;  HAUMF & PLAINTIFF'S RESPONSE 38, 39; Doc. 59-9 at 81-87;  Doc. 81-12 at 31-33.)  As noted, Plaintiff was released from custody on December 20, 2018. (CUMF & PLAINTIFF'S RESPONSE 82; HAUMF & PLAINTIFF'S RESPONSE 41.)

The Court finds the foregoing facts to be undisputed but insufficient to raise a triable issue of material fact that Defendants were deliberately indifferent to Plaintiff's serious mental health needs during the period November 15, 2018 to December 20, 2018.  Defendants' response to Plaintiff's possible need for continuation of prescribed mental health medication, including verifying prescription information from Plaintiff's pharmacy and conducting a mental health screening which resulted in scheduling a "STAT" psychiatric assessment for medication support, was consistent with the continuum of care and community standard practices upon which the continuum of care was modelled.  (Doc. 59-1 at 6-7; Doc. 71 at 12, 16; *see also* CUMF & PLAINTIFF'S RESPONSE 37, 38, 57, 68, 89; Doc. 68 at 160-87); *Warner*, 2018 WL 3853943, at *5; *Staggs*, 2012 WL 1084923, at *4.  Particularly so as Plaintiff's electronic medical records from his first incarceration did not support continuation of AAA medication.  (*See* n.8.)

To the extent Plaintiff alleges deliberate indifference because he was not seen immediately (i.e. "STAT") for assessment of medication support following Behavioral Health's receipt of his

1   November 21, 2018  prescription and medication information (*see* Doc. 68 at 182), he does not point

2   to supporting facts in the record. Instead, the record reflects only the uncontroverted opinion of the

3   County's expert Dr. Abrams that Behavioral Health's noted response was consistent with the

4   continuum of care and national and community standards.  (Doc. 59-1 at 6-7.)

5          Plaintiff does not raise a triable issue of material fact that he sustained physical, emotional, and

6   psychological injury and severe emotional distress from not receiving prescription mental health

7   medication during the period November 15 to December 6, 2118.  For example, the undisputed factual

8   record is that Plaintiff, notwithstanding his serious mental health issues, was not in drug withdrawal at

9   the time of booking or at the time of release on December 20, 2018.  (CUMF & PLAINTIFF'S

10  RESPONSE 73, 90; *see also* Doc. 59-1 at 7.)  The uncontroverted opinion of County expert, Dr.

11  Abrams, is that Plaintiff did not experience any meaningful or serious objective symptoms or serious

12  objective symptoms of substance withdrawal of any sort that required medical, psychiatric or

13  psychological intervention.  (Doc. 59-1 at 4; *see also id.* at 6-7.)

14         **b.      Deliberate Indifference: Classification to Administrative Segregation**

15         Plaintiff alleges that Defendants were deliberately indifferent to his serious mental health

16  needs by classifying him to administrative segregation for one of the two months he was in custody

17  during his Second Incarceration.  Specifically, Plaintiff alleges that he was classified to administrative

18  segregation solely on grounds he was an inmate with mental health history and needs, and  thereby

19  denied health care, in order to isolate and punish him, and to reduce monies spent on health care in the

20  jails.

21         However, the Court finds that Plaintiff has not raised a triable issue of material fact that

22  Defendants classified him to administrative segregation solely on the basis that he was an inmate with

23  mental health history and needs, including to isolate and punish him and reduce jail costs.[11]

24         **(1)      Administrative Segregation Responsive to Plaintiff's Request and**

25  **for his Safety**

26         The factual record shows that Plaintiff was classified to general population at his October 20,

27  2018 booking and flagged to be kept away from inmates associated with the Surenos gang.  (CUMF &

28  [11] See n.7.

34

1  PLAINTIFF'S RESPONSE 72, 139, 155 156; HAUMF & PLAINTIFF'S RESPONSE 23; *see also*

2  Doc. 59-5 at 3; Doc. 81-8 at 11; Doc. 81-12 at 19.)  On October 22, 2018, Plaintiff was transferred

3  from CRF to a general population cell at Lerdo.  (CUMF & PLAINTIFF'S RESPONSE 157; PAMF

4  & HA'S RESPONSE 25, 28.)

5           The undisputed factual record shows that nearly a month later, Plaintiff was reclassified to

6  administrative segregation at his own request due to his stated safety concerns. Specifically, on the

7  evening of November 18, 2018, Plaintiff handed a request slip to a KCSO deputy stating he needed to

8  be moved because members of the Bloods gang were threatening him.  (CUMF & PLAINTIFF'S

9  RESPONSE 138, 140, 141, 158, 159; *see also* PFDMF & COUNTY'S RESPONSE 32, 40, 42;

10  HAUMF & PLAINTIFF'S RESPONSE 31.)  Plaintiff was moved and interviewed regarding his

11  report of threats by the Bloods.  During the interview, Plaintiff reiterated that he also could not be

12  housed with the Surenos. (*Id.*) Plaintiff was reclassified from general population to an administrative

13  segregation cell twenty minutes later. (CUMF & PLAINTIFF'S RESPONSE 140, 141, 158, 159, 160,

14  179; HAUMF & PLAINTIFF'S RESPONSE 31, 32, 33; Doc. 59-9 at 35-36; *see also* Doc. 59-10 at

15  122-24.) Plaintiff remained in administrative segregation, apparently without complaint or

16  administrative challenge, until his release on December 20, 2018.  (*Id.*; *see also* CUMF &

17  PLAINTIFF'S RESPONSE 82, 163; PAMF & COUNTY'S RESPONSE 32.)

18           The Court finds Plaintiff does not raise a triable issue of material fact that his  reclassification

19  to administrative segregation was inconsistent the KCSO classification and administrative segregation

20  policies and the continuum of care, and deliberately indifferent to his serious mental health needs, for

21  the reasons stated.  (*See* Doc. 59-9 at 40-46; Doc. 68 at 102-04; Doc. 71 at 8-14.)  Plaintiff concedes

22  that administrative segregation can be used to provide protection to victimized inmates.  (CUMF &

23  PLAINTIFF'S RESPONSE 179.)  There is no dispute that Plaintiff requested and received alternative

24  housing due to his own concerns for his safety.[12]  (CUMF & PLAINTIFF'S RESPONSE 137, 169.)

25  Additionally, it is undisputed that Plaintiff was open to and receiving Hospital Authority and

26  Behavioral Health services at the time he was reclassified to administrative segregation and that he

27  _____

28  [12] Plaintiff's testimony that he did not choose administrative segregation as alternative housing is not evidence that he
was re-housed for reasons other than at his own request and for his own safety.  (See Doc. 81-8 at 15.)

1  continued to receive such services in administrative segregation.  (*See* section IV C 3 a, ante.)

2      To the extent Plaintiff alleges that Defendants were deliberately indifferent by failing to

3  document screening him for administrative segregation and monitoring him in administrative

4  segregation as required by the continuum of care, he does not proffer evidence in support.  (*See*

5  *Russell*, 31 F.4th at 742, and *Gordon*, 6 F.4th 972, ante; Doc. 68 at 103;  234-35.)  Particularly,

6  Plaintiff does not proffer evidence of deliberate indifference to his serious mental health needs due to

7  this failure to document, for the reasons stated.  *See e.g.*, *Gordon*, 6 F.4th at 972.  Furthermore,

8  Plaintiff has not proffered evidence that any of the Hospital Authority, Behavioral Health, and KCSO

9  found him unsuited for administrative segregation on any basis at any time, or that he was unsuited for

10  administrative segregation.  (*See e.g.*, KCUFM & PLAINTIFF'S RESPONSE 164, 175; Doc. 59-9 at

11  40-46; Doc. 68 at 102-04.)  Notably, the jail classification department reviewed and continued

12  Plaintiff's classification to administrative segregation on November 28, 2018, December 8, 2018, and

13  December 18, 2018.  (CUMF & PLAINTIFF'S RESPONSE 162.)

14      Finally, Plaintiff has not proffered evidence that housing in administrative segregation caused

15  him constitutional harm.  Particularly, he proffers no facts that he suffered denials or deprivations

16  services, property, or programming by virtue of such housing.  (*See* section IV C 3 a, ante, citing

17  CUMF & PLAINTIFF'S RESPONSE 73, 90, 178; Doc. 59-1 at 4, 6-7.)

18          **c.**     ***Monell* Liability**

19      Plaintiff alleges that Defendants violated his constitutional rights as above alleged through an

20  official policy, rule, custom or usage, or the acts/omissions of their officials under color of law.

21  However, the Court finds that Plaintiff has not raised a triable issue of material fact that during this

22  occurred during his second incarceration, whether as to his serious mental health needs, the mental

23  health care provided or his classification to administrative segregation.  S*ee Jett*, 439 F.3d at 1096;

24  *Monell*, 436 U.S. at 694.

25      The Court has found that Plaintiff does not raise a triable issue of material fact that Defendants

26  were deliberately indifferent under *Monell* to his serious mental health needs during his first

27  incarceration, for the reasons stated.  (*See* section IV C 2 c, ante.)  The Court has found that Plaintiff

28  does not raise a triable issue of material fact that Defendants were deliberately indifferent to his

serious mental health needs by classifying him to administrative segregation during the period
November 18, 2018 to December 20, 2018, for the reasons stated.  (*See* section IV C 3 b, ante).  The
Court has found that Plaintiff does not raise a triable issue of material fact that Defendants were
deliberately indifferent to his serious mental health needs in the provision of mental health care during
the period November 15, 2018 to December 20, 2018,  for the reasons stated.  (*See* section IV C 3 a,
ante.)  Absent deprivation of a constitutional right, there is no liability under *Monell* in these regards.
*See Mabe*, 237 F.3d at 1110-11.

Though Plaintiff has raised a triable issue of material fact that Defendants were deliberately
indifferent to his serious mental health need for assessment of AAA medication support during the
period October 20, 2018 to November 15, 2018, he fails to satisfy *Monell*.  Plaintiff has not proffered
facts that the due process violation was due to Defendants' policy, custom, rule, or act/omission of the
named individual Defendants acting in their official capacity under color of law.

Plaintiff has not submitted evidence of any express policy of Defendants that was deliberately
indifferent to his serious mental health needs during the period October 20, 2018 to November 15,
2018, for the reasons discussed above.  (*See* section IV C 3 a, b, ante.)  Nor has Plaintiff submitted
evidence that Defendants were deliberately indifferent to his serious mental health needs during this
period pursuant to custom, rule, or act/omission of the named individual Defendants acting in their
official capacity under color of law.  Instead, Plaintiff raises a triable issue of material fact that his due
process rights were violated by the Hospital Authority's single failure to verify his prescription and
medication information, and thereupon by Behavioral Health's single failure to triage him for priority
assessment of medication support.

These allegations that Plaintiff experienced a one-time delay in AAA assessment for unverified
medication support lasting at most twenty-six days fall short of a "traditional method of carrying out
policy."  *Id.*  Plaintiff fails entirely to proffer facts of multiple similar incidents as a basis to infer a
"traditional method of carrying out policy" of indifference to mental health medication support.
*Trevino*, 99 F.3d at 918; *see also J.M. by & through Rodriguez*, 2018 WL 5879725, at *5; *Gordon*, 6
F.4th at 974; *Nyarecha*, 2024 WL 4511616, at *2.  More generally, the noted undisputed facts in this
case belie the customary policy asserted by Plaintiff.  Plaintiff does not proffer facts that upon his

advising a Hospital Authority nurse of his need for mental health medication on November 15, 2018, Defendants thereafter were deliberately indifferent to his serious mental health need for assessment of medication support, as discussed above.  (*See* section IV C 3 a, ante.)

Nor has Plaintiff proffered facts of "a pattern of similar constitutional violations by untrained employees[,]" *Connick*, 563 U.S. at 62, or that the alleged violations were the obvious result of a lack of training.  (*Id.* at 63.)  Particularly, Plaintiff has not alleged how specific employees were inadequately trained resulting in deliberate indifference on these facts.  (*Id.* at  62.)  Defendants' noted response to Plaintiff's November 15, 2018 disclosure belies any lack of training.  Moreover, the Hospital Authority offers uncontroverted expert opinion that the County's framework for supplemental mental health training meets state law requirements.  (Doc. 71 at 8-9, 17; *see also* HAUMF & PLAINTIFF'S RESPONSE 51, 52, 53, 54, 55, 71.)  The County offers uncontroverted expert opinion that its staff was qualified by background and education and met national and community standards.  (Doc. 59-1 at 6-7.)

### d.    Individually Named Defendants

Plaintiff brings the claim against individual Defendants Youngblood, Davis, and Walker, for actions and omissions in their capacities as public employees under color of law. As discussed above, Plaintiff's official capacity allegations against the individual Defendants are redundant of the above discussed *Monell* allegations.  (*See* section IV C 2 d, ante.) *See Luke*, 954 F. Supp. at 203.

To the extent Plaintiff may name any individual Defendant in his personal capacity, he fails to proffer facts raising a triable issue of material fact that these Defendants knew of or participated in Plaintiff's incarceration, care, and treatment during the Second Incarceration.[13]  (*See* section IV C 2 d, ante); *see also Franco*, 2009 WL 10698471, at *1  Cal. Aug. 12, 2009).  Absent such linkage, Plaintiff fails to raise a triable issue of material fact that any individual Defendant was objectively indifferent to his serious mental health needs (*see* section IV C 3 a, b, ante; *Deloney*, 2019 WL 1875588, at *5-6), or that any individual supervisory Defendant had personal involvement or a sufficient causal connection to Plaintiff's incarceration, care, and treatment (*see* section IV C 3 a, b, ante; *Anthony*, 2021 WL 1786338, at *7; *Rodriguez,* 891 F.3d at 798).  This is insufficient. *Toguchi*, 391 F.3d at 1060.  "If a

---

[13] See n.8.

1  prison official should have been aware of the risk, but was not, then the official has not violated the

2  Eighth Amendment, no matter how severe the risk." *Id.*; *see also L.W.*, 92 F.3d at 899; *Barren*, 152

3  F.3d at 1194.

4  **D.     Third Cause of Action**

5          Plaintiff alleges that Defendants the County, KCSO, and Individual Defendants Youngblood

6  and Davis denied him due process under the Fourteenth Amendment and were deliberately indifferent

7  by: (1) housing him in filthy, vermin infested conditions that were unhealthy and facilitated a MRSA

8  outbreak, and (2) failing to prevent his torturous intimidation and exploitation by other prisoners.

9          **1.     Legal Standards**

10                **a.     Civil Rights Act**

11         The legal standards under the Civil Rights Act are set out above in section IV C 1 a, *ante*.

12 Additionally, the Court observes that "[a] pre-trial detainee bringing a Fourteenth Amendment

13 conditions of confinement claim must show that the conditions under which that detainee was

14 confined 'put [him] at substantial risk of suffering serious harm.' " *Smith v. Washington*, 781 F. App'x

15 595, 597 (9th Cir. 2019), *reh'g denied* (Aug. 1, 2019) (quoting *Castro*, 833 F.3d at 1071)).  Pretrial

16 detainee conditions-of-confinement claims are analyzed using a standard of "objective deliberate

17 indifference." *Gordon*, 888 F.3d at 1124.

18         A pretrial detainee must therefore show that: (1) a particular defendant made an intentional

19 decision with respect to the conditions under which the pretrial detainee was confined, (2) those

20 conditions put him at substantial risk of suffering serious harm, (3) the defendant did not take

21 reasonable available measures to abate that risk, even though a reasonable officer in similar

22 circumstances would have appreciated the high degree of risk - making the consequences of the

23 defendant's conduct obvious, and (4) by not taking such measures, the defendant caused the detainee's

24 injuries.  *Id.* at 1125; *see also Castro*, 833 F.3d at 1071.

25                **b.     *Monell* Liability**

26         **2.     First Incarceration and Second Incarceration**

27         Plaintiff alleges that Defendants were deliberately indifferent to his conditions of confinement

28 by: (1) housing him in unsanitary and unhealth conditions, and (2) failing to protect him from other

1  inmates. Plaintiff alleges that as a result, he sustained physical and emotional and psychological injury

2  and severe emotional distress.

3  **a.    Unsanitary and Unhealthy Conditions**

4  Plaintiff alleges that:

> The physical condition of the jails was filthy, the jail abounded in both vermin of an insect
> and rodent variety which in turn resulted in the accumulation of feces and unhealthful
> conditions. The conditions were such that the facilities had a MRSA outbreak which due
> the failure of the Defendants to take any measures to abate it, resulted in its spread
> throughout the facility.

8  (Doc. 35 at 17.)  Plaintiff proffers evidence in the form of his jail journal and deposition testimony that

9  on unspecified occasions(s) and at unspecified locations, he encountered, was crawled upon and bitten

10  by rodents and ants.  (*See* PLAINTIFF'S RESPONSE TO CUMF 22-23; Doc. 70 at 220; Doc. 75-7 at

11  10-11; Doc. 75-8 at 30; Doc. 81-8 at 30.)  Plaintiff proffers evidence that he had a MRSA infection in

12  his leg while in jail, though he concedes he does not know how he contracted it.  (Doc. 70 at 221; *see*

13  *also* Doc. 59-1 at 4-5; see also CUMF & PLAINTIFF'S RESPONSE 24.)  Plaintiff proffers evidence

14  that he suffered PTSD as a result of conditions at the jail.  (Doc. 81-8 at 30.)

15  "Jail officials have a duty to ensure that detainees are provided adequate shelter, food,

16  clothing, sanitation, medical care, and personal safety." *Shorter v. Baca*, 895 F.3d 1176, 1185 (9th

17  Cir. 2018). The Court finds that Plaintiff fails to raise a triable issue of material fact that Defendants

18  the County, KCSO, Youngblood and Davis were deliberately indifferent to conditions of his

19  confinement that were unsanitary and unhealthy.  The undisputed record shows that KCSO had

20  detention policies and procedures that provided for jail facility sanitation and vermin and pest control.

21  (CUMF & PLAINTIFF'S RESPONSE 92, 93, 94, 95, 96, 97, 98, 99, 100, 101, 102, 103, 104, 105; *see*

22  *also* Doc. 59-9 at 47-57.)  Davis attests to County policies regarding sanitation practices in the jail

23  facilities including inspection and correction of sanitation and health problems, and implementation of

24  a vermin control plan requiring prompt reporting of vermin or pest infestation.  (Doc. 59-9 at 47-48.)

25  Davis avers that: (1) the County adopted policies and took measures to protect against rodents and

26  vermin in its jails including the use of traps, outside exterminators, and use of utility deputies and

27  cleaning strategies, (2)  he never saw a rat in either CRF or Lerdo, though he occasionally saw mice in

28  the jail facilities and rats outside Lerdo, (3) he never saw an ant or cockroach infestation in jail

40

1  facilities, and (4) he never heard of or received complaints about vermin, rodents or MRSA in jail

2  facilities in 2018.  (CUMF & PLAINTIFF'S RESPONSE 22, 23, 24; Doc. 59-7 at 3-4.)  Youngblood

3  avers that he never witnessed, heard of, or received complaints about any rodent, vermin or MRSA in

4  the County jail in 2018.  (CUMF & PLAINTIFF'S RESPONSE 12-13 ; Doc. 59-4 at 2.)

5      Plaintiff does not offer evidence that the County, KCSO, Youngblood and Davis were on

6  notice of the alleged conditions, which were observed and experienced only by him and only during

7  his second incarceration.[14]  Moreover, Plaintiff's evidence does not show when, where, and the extent

8  to which he encountered the alleged conditions; or that he reported the conditions to Defendants; or

9  that he requested aid from Defendants as a result of such conditions.

10     To the extent Plaintiff alleges that these conditions were experienced in administrative

11  segregation, he does not make a factual showing that Defendants intended the conditions as

12  punishment for his status as an inmate with mental health history and needs.  (*See* section IV C 2 b,

13  ante); *see also Bell*, 441 U.S. at 538 (to prevail on a substantive due process claim, the plaintiff must

14  establish that the restrictions imposed by his confinement constituted punishment as opposed to being

15  incident to legitimate governmental purposes).

16          **b.      Failure to Protect**

17     Plaintiff alleges that other prisoners were allowed to victimize and intimidate him including as

18  a means for the County, KCSO, Youngblood and Davis to control the jails. Plaintiff alleges that:

19      There was also prevalent in the jail facilities a culture allowing the intimidation and
20      exploitation of prisoners such as Plaintiff by other prisoners as another means of control.
        This was allowed to occur as a means of control of prisoners and detainees and resulted in
21      a failure to protect prisoners in violation of the United States Constitution.

22  (Doc. 35 at 18.) The Ninth Circuit held in *Castro* that under the Fourteenth Amendment, failure-to-

23  protect claims, such as prison officials' failure to protect an inmate from violence at the hands of other

24  inmates, brought by pretrial detainees are analyzed under the above discussed objective deliberative

25  indifference standard.  833 F.3d at 1069, 1071.

26     Plaintiff fails to raise a triable issue of material fact that the named Defendants were

27  _____

28  [14] Plaintiff does not proffer facts that he encountered the alleged conditions during his First Incarceration.  (*See* Doc.754-7 at 10-11; Doc. 75-8 at 30.)

1   deliberately indifferent by failing to protect him from other inmates.  The undisputed record is that

2   KCSO had detention policies and procedures that classified inmates to provide safe and secure

3   housing and programming.  (CUMF & PLAINTIFF'S RESPONSE 132, 133, 134.)  Davis confirmed

4   that in 2018, there was no County policy of allowing inmates to victimize or intimidate other inmates

5   including to control inmates in the jails.  (Doc. 59-7 at 4.)  The record reflects that administrative

6   segregation was an option to maintain safety, security, order, and control of the jail (CUMF &

7   PLAINTIFF'S RESPONSE 135; *see also* section IV C 3 b, ante), including as a means for protection

8   against other inmates at the request of a victim inmate (CUMF & PLAINTIFF'S RESPONSE 137,

9   179).

10        Plaintiff does not contend or offer evidence that Defendants failed to protect him from other

11  inmates during his first incarceration.  (*See* Doc. 75-8 at 14-15; see also CUMF & PLAINTIFF'S

12  RESPONSE 140, 141.)  As to his second period of incarceration, Plaintiff's factual proffer does not

13  raise a triable issue of material fact that these Defendants intentionally placed him at substantial risk of

14  serious harm from other inmates and then failed reasonably to abate that risk, causing him harm.

15  Instead, at booking, he was classified to general population with a flag that he be kept away from the

16  Surenos gang.  Nearly a month later, on November 18, 2018, Plaintiff informed jail staff for the first

17  time that he was being threatened by gang inmates and wanted a housing change.  (*See* Doc. 70 at

18  199-204.)  Plaintiff testified that he was worried the Bloods and members of the Norteno gang might

19  hurt him.  (*Id.*)  Jail staff immediately interviewed Plaintiff and reclassified him to administrative

20  segregation, where he remained until his release on December 20, 2018.  (*See* section IV C 3 b, ante.)

21        Plaintiff does not provide evidence that Defendants intended to expose him to a substantial risk

22  of harm. Plaintiff testified that he shared a cell with a double murderer; that there were inmates

23  affiliated with the Bloods and Nortenos in his pod; that there was violence; that one individual

24  threatened him with great bodily harm; and that he had to get out of that situation lest someone get

25  stabbed.  (Doc. 70 at 202-04; Doc. 81-8 at 14.)  But no facts raise a triable inference that Defendants'

26  classification process was intended to put him at substantial risk of harm.  The undisputed facts reflect

27  that Defendants had an express policy of protecting the safety of inmates, and that Plaintiff was

28  screened for and kept away from the enemies he disclosed, the Surenos.  Plaintiff point to facts in the

1  record that Defendants knew or should have known the inmates in his general population pod posed a

2  substantial threat to him and disregarded that threat of harm. *See e.g., Cotta v. Cnty. of Kings*, 79 F.

3  Supp. 3d 1148, 1166 (E.D. Cal. 2015), *on reconsideration in part,* 2015 WL 521358 (E.D. Cal. Feb. 9,

4  2015), *aff'd in part, rev'd in part*, 686 F. App'x 467 (9th Cir. 2017) (defendant custody officer entitled

5  to summary judgment where "Plaintiffs have proffered no evidence showing that [the officer] was on

6  notice that [cellmate] posed a threat to decedent's safety.").

7        Plaintiff also fails to proffer facts that these Defendants were deliberately indifferent to his

8  request for rehousing based on his alleged perceived safety threat. To the contrary, he was rehoused

9  within 30 minutes of his making his request for rehousing due to his stated safety concerns. (*See* Doc.

10 70 at 203.)  Plaintiff has not demonstrated on the factual record or even argued that these Defendants

11 acted unreasonably in response to his perceived threat.  Finally, Plaintiff has not made any factual

12 showing that he was harmed in relation to the perceived safety threat.

13               **c.     *Monell* Liability**

14       Plaintiff alleges that Defendants are liable under *Monell* for their official policy, rule, custom,

15 usage, or the acts/omission of their public officials under color of law, which violated his

16 constitutional rights as above alleged. The Court finds that Plaintiff has not raised a triable issue of

17 material fact that Defendants are liable under *Monell* for deliberate indifference to his conditions of

18 confinement and safety.  *See Jett*, 439 F.3d at 1096; *Monell*, 436 U.S. at 694.  As a threshold matter,

19 Plaintiff has not presented evidence that the County, KCSO, Youngblood and Davis violated his

20 constitutional rights by deliberate indifference to his conditions of confinement and safety, for the

21 reasons stated.  (*See* section IV C 3 b,  ante.)  Here again, absent deprivation of a constitutional right,

22 there is no liability under *Monell*.  *See Mabe*, 237 F.3d at 1110-11.

23       In any event, Plaintiff has not raised a triable issue that these Defendants are liable under

24 *Monell*.  Plaintiff has not demonstrated an express policy of Defendants that was deliberately

25 indifferent to his conditions of confinement and safety.  (*See* section IV D 2 a, b, ante.) Rather, the

26 record demonstrates that these Defendants had in place detention policies and procedure to classify

27 inmates to constitutionally adequate housing safe from other inmates.

28       Also, Plaintiff has not proffered facts that the alleged conditions of confinement and failure to

1  protect from threats posed by other inmates, affecting him alone, constitute Defendants' custom or

2  practice, or the act/omission of the named individual Defendants in their official capacity under color

3  of law.  Plaintiff's conditions of confinement allegations are unsupported by any facts of frequency

4  and duration.  (*Id.*; *see also J.M. by & through Rodriguez*, 2018 WL 5879725, at *5; *Gordon*, 6 F.4th

5  at 974; *Nyarecha*, 2024 WL 4511616, at *2.)  Plaintiff's failure to protect allegations relate at most to

6  a single instance where Defendants were place on notice of and thereupon responded to his perceived

7  safety threat.  (*Id.*)  Plaintiff fails entirely to proffer facts of multiple similar incidents as a basis to

8  infer a "traditional method of carrying out policy" of indifference to his conditions of confinement and

9  safety.  *Trevino*, 99 F.3d at 918.

10      Nor has Plaintiff presented evidence of "a pattern of similar constitutional violations by

11  untrained employees[,]"  *Connick*, 563 U.S. at 62, or of alleged violations that were the obvious result

12  of a lack of training.  (*Id.* at 63.)  Plaintiff does not identify which of Defendants' employees were

13  inadequately trained or how specifically the inadequacies of those employee's training amounted to

14  deliberate indifference to Plaintiff's conditions of confinement and safety on the facts of this case.

15  *Connick*, 563 U.S. at 62.

16          **d.    Individually Named Defendant**

17      Plaintiff brings the claim against individual Defendants Youngblood and Davis for actions and

18  omissions in their capacities as public employees under color of law. To the extent Plaintiff may name

19  any individual Defendant in his personal capacity, Plaintiff fails to proffer facts raising a triable issue

20  of material fact that these Defendants are linked to the alleged constitutional deprivations.  *See*

21  *Franco*, 2009 WL 10698471, at *1.  Applying the objective deliberate indifference standard in

22  analyzing pretrial detainee Fourteenth Amendment claims against individual defendants (*see* section

23  IV C 2 d, ante; *Deloney*, 2019 WL 1875588, at *5-6), there must be personal involvement or a

24  sufficient causal connection linking a supervisory official (*id.*; *see also Anthony*, 2021 WL 1786338,

25  at *7; *Rodriguez,* 891 F.3d at 798).  Plaintiff does not proffer facts that any individual Defendant knew

26  of or participated in the allegedly unconstitutional conditions of confinement and failure to protect.[15]

27  (*See* section IV C 2 d, ante.)

---

28  [15] See n.8.

1    As discussed above, deliberate indifference is a high legal standard.  *Toguchi*, 391 F.3d at

2    1060.  "If a prison official should have been aware of the risk, but was not, then the official has not

3    violated the Eighth Amendment, no matter how severe the risk."  *Id.*; *see also L.W.*, 92 F.3d at 899;

4    *Barren*, 152 F.3d at 1194.

5    **E.    Fifth Cause of Action**

6    Plaintiff seeks to require Defendants to develop, implement and mandate practices: (1) for

7    housing and treating detainees and convicted inmates with mental issues consistent with the standard

8    of practice in the community and constitutional standards, (2) for maintaining clean and healthful jails

9    that promote and protect the physical and mental welfare of prisoners in the jails, and (3) for

10    controlling and supervising jails that protect the safety of prisoners from exploitation and intimidation.

11    **1.    Legal Standard**

12    Where a plaintiff seeks injunctive relief, he or she must show not only an injury in fact but
     also " 'a sufficient likelihood that he will again be wronged in a similar way.' That is, he
13    must establish a 'real and immediate threat of repeated injury.' " *Chapman v. Pier 1 Imps.
     (U.S.), Inc.,* 631 F.3d 939, 948 (9th Cir. 2011).
14

15    *Davis v. Astrue*, 874 F. Supp. 2d 856, 862 (N.D. Cal. 2012).

16    **2.    Plaintiff lacks Standing For and is not Entitled to Injunctive Relief**

17    Plaintiff alleges standing to seek injunctive relief on grounds that "[he] is a Kern County

18    resident and has had contacts with the Kern County Sheriff's office and the judicial system prior to

19    these Incarcerations.  As a citizen of the County, in all probability he stands to have additional future

20    contacts with the Sheriff's office."  (Doc. 75 at 21; Doc. 81 at 22.) However, Plaintiff lacks standing

21    for the injunctive relief he seeks.  Plaintiff cannot assert rights of third party detainees, for the reasons

22    stated.[16]  Plaintiff's allegations of individual standing are only conclusory and not a basis for relief.

23    *See Frankel v. Regents of Univ. of California*, 2024 WL 3811250, at *4 (C.D. Cal. Aug. 13, 2024),

24    *appeal dismissed* 2024 WL 4803385 (9th Cir. Aug. 26, 2024) (citing *Index Newspapers LLC v. U.S.

25    Marshals Serv.*, 977 F.3d 817, 825 (9th Cir. 2020)) ("When a plaintiff's standing is grounded entirely

26    on the threat of repeated injury, a plaintiff must show a sufficient likelihood that [s]he will again be

27    wronged in a similar way."); *Stannard v. State Center Community College District*, 733 F. Supp. 3d

28    [16] See n.4.

45

946, 963 (E.D. Cal. 2024) (same); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (quoting

*O'Shea v. Littleton*, 414 U.S. 488, 502 (1974)) (same). While Plaintiff argues that this case is factually

distinguishable from *Lyons*, he fails to explain with facts why that is so. (*See* Doc. 81 at 22.) The

Court finds that here, as in *Lyons*, the "speculative nature" of Plaintiff's claim of future injury

requires a finding that "this prerequisite of equitable relief" has not been fulfilled. 461 U.S. at 111.

**F.    Conclusions**

Plaintiff fails to raise a triable genuine issue of material fact under the *Monell* standard that: (1)

Defendants were deliberately indifferent to his serious mental health needs due to the mental health

care provided and the decisions to classify him to administrative segregation, and (2) Defendants the

County, KCSO, Youngblood and Davis were deliberately indifferent to his conditions of confinement

and safety. Plaintiff fails to raise a triable genuine issue of material fact that the individually named

Defendants have personal liability. Plaintiff fails to raise a triable genuine issue of material fact that

he has standing for and is entitled to injunctive relief against Defendants. Plaintiff has failed to

prosecute the Second and Fourth Causes of Action contained in the Second Amended Complaint.

<strong>ORDER</strong>

Based on the foregoing, the Court **ORDERS:**

1.     The County Defendants' request for judicial notice of Kern County Sheriff's Office

Detentions Bureau Policies K-100, K-400, D-100, D-220, D-600. H-400, H-800 (Doc. 59-9 at 39-58),

and Behavioral Health Policies 201.10, 202.10, and 204.10 (Doc. 59-9 at 98-110) is **GRANTED**.

2.     The County Defendants' hearsay objection to Plaintiff's Exhibit 4, and Plaintiff's

relevance objection to County Defendants' Undisputed Facts 79 and 81, are **OVERRULED**.

3.     The Second Amended Complaint's Second and Fourth Causes of Action are

**DISMISSED** for non-prosecution.

4.     The motion for summary judgment by Defendants the County of Kern, the County of

Kern Sheriff's Department, Behavioral Health and Recovery Services, Sheriff Donny Youngblood,

Deputy Tyson Davis, and Bill Walker, (Doc. 59), is **GRANTED** as to the First, Third, and Fifth

Causes of Action.

5.     The motion for summary judgment by Defendant the Kern County Hospital Authority

46

1   (Doc. 66) is **GRANTED** as to the First and Fifth Causes of Action.

2          6.        The **CLERK** is directed to enter judgment for Defendants and close the case.

3

4   IT IS SO ORDERED.

5      Dated:   __**March 3, 2025**__

          _____
          UNITED STATES DISTRICT JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

47